ADOLPH C. LAVIN and JEAN LAVIN, )
surviving parents of TROY JAMES )
LAVIN, Deceased, and ADOLPH C. )
LAVIN, in his capacity as Administrator )
of the estate of TROY JAMES LAVIN, )
                                         )       **Davidson Circuit**

          **Plaintiffs/Appellants,** )       **No. 96C-1475**
                                           )

**VS.** )

                                           )
**ROSS JORDON, SUSAN JORDON,** )       **Appeal No.**
**and SEAN JORDON,** )       **01A01-9709-CV-00455**
                                           )
          **Defendants/Appellees.** )

**FILED**

**September 2, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

## IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

### APPEAL FROM THE CIRCUIT COURT OF DAVIDSON COUNTY
### AT NASHVILLE, TENNESSEE

### HONORABLE BARBARA N. HAYNES, JUDGE

Charles R. Ray, #3188                     Vincent E. Wehby, #2288
211 Third Avenue North              501 Union Street, Suite 500
Nashville, Tennessee 37219-8288     Nashville, Tennessee 37219-2305
ATTORNEYS FOR PLAINTIFFS/APPELLANTS


John L. Norris, #6007
HOLLINS, WAGSTER & YARBROUGH, P.C.
Suite 2210, 424 Church Street
SunTrust Center
Nashville, Tennessee 37219
ATTORNEY FOR DEFENDANTS/APPELLEES

### REVERSED AND REMANDED.

                                  HENRY F. TODD
                                  PRESIDING JUDGE, MIDDLE SECTION

CONCURS:
BEN H. CANTRELL, JUDGE
WILLIAM B. CAIN, JUDGE

| | |
|---|---|
| **ADOLPH C. LAVIN and JEAN LAVIN,** | ) |
| **surviving parents of TROY JAMES** | ) |
| **LAVIN, Deceased, and ADOLPH C.** | ) |
| **LAVIN, in his capacity as Administrator** | ) |
| **of the estate of TROY JAMES LAVIN,** | ) |
| | ) **Davidson Circuit** |
| **Plaintiffs/Appellants,** | ) **No. 96C-1475** |
| | ) |
| **VS.** | ) |
| | ) |
| **ROSS JORDON, SUSAN JORDON,** | ) **Appeal No.** |
| **and SEAN JORDON,** | ) **01A01-9709-CV-00455** |
| | ) |
| **Defendants/Appellees.** | ) |

# O P I N I O N

The plaintiff, Adolph C. Lavin and wife, Jean Lavin, surviving parents of Troy James Lavin, brought this action against Ross and Susan Jordon and their son, Sean Jordon, for the wrongful death of Troy Lavin, who was shot and killed by Sean Jordon. The Trial Judge entered an interlocutory partial judgment on the pleadings limiting the recovery from the parents of Sean Jordon to $10,000.00 pursuant to T.C.A. §§ 37-10-101, 102 and 103 which read as follows:

> **37-10-101. Property damage by juvenile -Recovery against parents or guardian**. -Any municipal corporation, county, town, village, school district or department of this state, or any person, or any religious organization, whether incorporated or unincorporated, shall be entitled to recover damages in an action in assumpsit in an amount not to exceed ten thousand dollars ($10,000) in a court of competent jurisdiction from the parents or guardian of the person of any minor under eighteen (18) years of age, living with the parents or guardian of the person, who maliciously or willfully causes personal injury to such person or destroys property, real, personal or mixed, belonging to such municipal corporation, county, township, village, school district or department of this state or persons or religious organizations. [Acts 1957, ch. 76, § 1; 1969, ch. 170, § 1; 1976, ch. 408, § 1; 1981, ch. 161, § 1; T.C.A., § 37-1001; Acts 1985, ch. 439, § 1.]

> **37-10-102. Limitation on amount of recovery**. -The recovery shall be limited to the actual damages in an amount not to exceed ten thousand dollars ($10,000) in addition to taxable court costs. [Acts 1957, ch. 76, § 2; 1969, ch. 170, § 2; 1976, ch. 408, § 2; 1981, ch. 161, § 2; T.C.A., § 37-1002.]

**37-10-103. Due care and diligence as barring recovery**.
(a) A parent or guardian shall be liable for the tortious activities of a minor child that cause injuries to persons or property where the parent or guardian knows, or should know, of the child's tendency to commit wrongful acts which can be expected to cause injury to persons or property and where the parent or guardian has an opportunity to control the child but fails to exercise reasonable means to restrain the tortious conduct.

(b) A parent or guardian shall be presumed to know of a child's tendency to commit wrongful acts, if the child has previously been charged and found responsible for such actions. [Acts 1957, ch. 76, § 3; 1981, ch. 161, § 3; T.C.A., § 37-1003; Acts 1985, ch. 439, § 2.]

The plaintiffs have appealed and presented the following issue for review:

1.  Whether T.C.A. §37-10-101, et. seq., limits the plaintiff's recovery against the parent of a minor child to ten thousand dollars ($10,000.00) where the plaintiffs allege that a parent failed to control his or her child when the parent knew, or should have known in the exercise of due care, of the child's tendency or propensity to act in such a way as would naturally result in an injury to plaintiffs.

The appellees present the same issue in the following form:

1.  Whether the Trial Court correctly ruled that Tenn. Code Ann. Secs. 37-10-101 to 37-10-103 limit any liability of Ross and Susan Jordon for their allegedly negligent failure to supervise and/or control their minor child to ten thousand dollars ($10,000.00).

The essence of the partial judgment is that the complaint fails to state a claim for more than $10,000.00.

The material of the allegations of the complaint are as follows:

6.  On or about June 4, 1995 Defendant Sean Jordon was observed around the home of Mrs. Francis V. Garrison, at 4305 West Hamilton Road in Nashville, Davidson County, Tennessee at approximately 1:00 p.m. in the afternoon. Upon returning to her residence, Mrs. Garrison discovered that she had been the victim of a home burglary and after having inventoried her personal belongings discovered among the items stolen were two (2) rifles and two

-3-

(2) shotguns. Upon learning that the Defendant, Sean Jordon, who had access to a key to Mrs. Garrison's home, had been seen on the premises, Mrs. Garrison confronted the Defendants, Ross Jordon and Susan Jordon and advised them that she had information that their son, Defendant Sean Jordon, had entered her home and stolen rifles and shotguns. Though the Defendants, Ross Jordon and Susan Jordon were both aware at the time of the conversation that Sean Jordon had a history of anti-social, and criminal behavior, and that he aspired to be a "gangster," and actively associated with a violent gang, Sean Jordon, had burglarized Mrs. Garrison's home, stolen the guns, and retained the guns for further and future anti-social criminal conduct.

7.     Shortly after the burglary of Mrs. Garrison's residence, and after Mrs. Garrison confronted the Defendants with her knowledge about Sean Jordon's participation, Defendant, Susan Jordon, overheard a telephone conversation between her son and his friends where they admitted burglarizing the Garrison residence and hiding the guns close by the home of Sean Jordon. Defendant, Susan Jordon, even after having knowledge, based upon Sean Jordon's admission, over the telephone, that Sean Jordon had access to weapons that he could utilize for future anti-social and criminal activity, took no steps to ensure that Sean Jordon would not make use of the weapons.

- ---

8.     On June 29, 1995 the Pizza Hut on Clarksville Highway, Nashville, Davidson County, Tennessee received a telephone order from the telephone number 876-1318 directing that a pizza should be delivered to 4213 Hallmark Drive. Troy James Lavin agreed to deliver the pizza to this address. Sometime prior to 1:35 p.m., on that date, Troy James Lavin arrived at the residence of Sean Jordon at 4213 Hallmark Drive whereupon Troy James Lavin was shot multiple times with a .22 caliber rifle by Sean Jordon resulting in the death of Troy James Lavin. The murder weapon utilized, which was part of the weapons stolen from Mrs. Garrison, was retrieved by members of the Metropolitan Davidson County Police Department at the exact spot where Sean Jordon advised them that they would find the weapon.

- ---

The Defendant, Sean Jordon is liable to the Plaintiffs for compensatory and punitive damages for the loss of Troy James Lavin's life at the hands of Sean Jordon as permitted by T.C.A. § 20-5-113.

- ---

Defendants failed to exercise a reasonable means of controlling, policing or restraining the violent, assaultive, anti-social propensities of Sean Jordon in any fashion. Thus, the Defendants, Ross Jordon and Susan Jordon, were grossly negligent and are liable to the Plaintiffs in an amount to be determined for both compensatory and punitive damages.

- ---

14.     The senseless and wanton, wicked and depraved nature of the Defendant's Sean Jordon killing of Troy James Lavin, is the culmination of a history of

-4-

assaultive, violent, anti-social criminal conduct well documented and known to Defendants Ross Jordon and Susan Jordon. Prior to these events Sean Jordon was declared to be a delinquent child for having assaulted a minor. Sean Jordon was declared to be a delinquent child for having assaulted and raped a school mate at Pearl-Cohn High School.

In *Smith v. Salvaggio*, Tenn. Civ. App. 1914, the Court said:

This action was instituted by the defendant in error, Charles Salvaggio, by his next friend, Joe Salvaggio, against the plaintiff in error, Dora smith, in the Circuit of Shelby County, to recover of her damages growing out of injuries inflicted upon him by the son of the plaintiff in error, who was a minor of tender years.

There was a verdict in the Court below, where the case was tried before the Court and a jury, in favor of the defendant in error for $800, from which the plaintiff in error appealed to this Court, after her motion for a new trial had been overruled.

The declaration alleged that the plaintiff in error's son was a minor of very tender years, and that some time prior to the injury inflected upon the defendant in error, which was January 16, 1911, plaintiff in error purchased, or permitted to be purchased, by or for her said son, and to remain in his possession and control, and in the possession and control of one Ernest Nelms, also a boy of tender years, and a playmate of the plaintiff in error's son, a certain .22-caliber rifle; and that on or about the 16th day of January, 1911, and for sometime prior thereto, with the knowledge, consent and permission of the plaintiff in error, said boys were shooting the said rifle in and around their homes and the home or the defendant in error on Rayburn avenue, in the city of Memphis, which fares in the city of Memphis, when the said boys either negligently or accidentally, or on purpose, shot the defendant in error in the back and side, seriously and permanently injuring him.

That the defendant in error was upon the premises surrounding his home at the time of the shooting, and that said shooting was wholly without fault upon his part; that the plaintiff in error was guilty of negligence, in, that she put, or caused to be put, in the hands of said boys, or allowed and permitted said rifle, a dangerous instrument, to be used by said boys of tender years, both of whom were inexperienced in the use of such an instrument, and lacked the proper discretion necessary for the handling of the same, which fact was well known to the plaintiff in error.

The plaintiff in error filed a plea of not guilty.

There is evidence tending to show that the plaintiff in error was running a public resort on Rayburn avenue, in the city of Memphis; that she had been married, but was divorced

from her husband, and had one child -a son, who was about nine years of age at the time of the injury to the defendant in error; that this son did not stay at the home of the plaintiff in error, but stayed at the home of Luella Williams, who lived about a half block from the plaintiff in error. The reason for the son staying at the home of Luella Williams was on account of the character of house kept by the plaintiff in error. The plaintiff in error paid Luella Williams $5 per week for keeping her son at her home, though the proof shows the son was at the home of the plaintiff in error daily, and sometimes several times per day; but remained at the home of the Williams woman at night.

There was also evidence offered by the plaintiff below tending to show that sometime prior to his injuries, the plaintiff in error's son had secured, in some way, a gun -a rifle of .22-caliber, and had been shooting said rifle around the premises of the plaintiff in error, which was only two doors from where the defendant in error lived, and had also been shooting on the street in the vicinity of his home, and the plaintiff in error's home.

One witness testified that he had seen the boy coming out of the plaintiff in error's house with said rifle, and there is other evidence in the record tending to show that he was seen on several occasions about the plaintiff in error's home shooting the rifle at birds and targets.

On the 16th day of January, 1911, while the plaintiff below was standing upon his premises, he says that the plaintiff in error's son and a companion was shooting the rifle near him, and that the plaintiff in error's son said to his companion, "I want to kill a dago," and took the rifle out of his companion's hand and fired upon the defendant in error, shooting him through the body, the ball entering his side passing clear through the body. There is evidence tending to show that the defendant in error suffered great pain and mental anguish from the wound inflicted, and was confined in the hospital for about a month from the injury.

The plaintiff in error testified that she did not know of her son having the gun in question; that he secured the gun without her knowledge or consent; and did not learn of her son having the gun until she learned of the shooting, which was three days after it occurred.

The boy testified that he purchased the gun at a store on Main street, paying $1.50 for it, and that he purchased it with money that he had earned in selling newspapers on Sundays. He says he bought the gun on his birthday, and carried it to the home of Luella Williams, where he kept it concealed under the bed. He says he did not shoot the defendant in error, but that Ernest Nelms, his companion, did the shooting.

It is insisted by the first assignment of error that there is not evidence to support the judgment.

We are of opinion that this assignment of error is not well taken. While the plaintiff in error testified that she did not know that her son had the gun, and was in the habit of shooting about her premises and on the street near the defendant in error's home, we think that there are facts and circumstances in the record tending to show that she did, and that the jury was warranted in inferring from the facts and circumstances proven that she did know it.

We think it is the well settled law that a parent who permits his or her child to have possession of a deadly weapon when, on account of the child's youth and inexperience, he is incompetent to be intrusted with it, and the parent knows the danger that might happen to others from the use of such weapon, or in the exercise of reasonable care should know it, is liable for injuries inflicted upon others by the child's reckless use of such weapon. In other words, the parent is chargeable with negligence in such cases, if, from all the facts and circumstances, he should have known of the probable danger and injury that might result to others from permitting the child to have the weapon in his possession. *Myers v. McDowell*, 53 L. R. A., 789; Pollock Torts, page 33; Am. & Eng. Ency. of Law, Vol. 21, 1057, 1058; *Binford v. Johnson*, 82 Ind., 427; *Carter v. Towne*, 98 Mass 567; 96 Am. Dec., 682; *Hoveron v. Noker*, 50 Am. Rep., 381; *Palmer v. Iverson*, 117 Ill. App., 535; 29 Cyc., 1666; 22 Am. & Eng. Ann. Cas., 1582.

The rule for such liability upon the part of the parent is not founded upon the relation of parent, but upon the ground of the negligence of the parent in permitting the child to have possession of the dangerous and deadly weapon, when, from his youth and inexperience, it might be reasonably anticipated, that in the use of such weapon the child would inflict injury upon others.

The question of the parent's negligence in such cases is always one for the jury. The question of the defendant's negligence in the case at bar was fairly left to the jury by the Court in the following instruction:

"So, with reference to the particular facts of this case, the Court charges you that if you find by a preponderance of the evidence in this case, that the defendant's son is a boy 8 or 9 years of age, and if you further find from a preponderance of the evidence that said boy had a rifle and was shooting at birds and targets about his home in the city of Memphis, and you further find from the preponderance of the evidence that said boy's mother, the defendant, knew that he had said rifle and was so using it, and if you further find from the preponderance of the evidence that said boy was incompetent to be intrusted with a deadly weapon, and the defendant knew the danger or should have known it by the exercise of ordinary and reasonable care, and if you further find from a preponderance of the evidence that it was negligence on the part of the defendant to allow said boy to have and use said rifle, and you further find from the preponderance of the evidence that said

boy was engaged with the companion in shooting said rifle, and while so engaged he or his companion shot the plaintiff and wounded him, then you should find for the plaintiff."

"On the other hand, gentlemen, if you find from the evidence in this case that the defendant didn't know that her said son had said rifle, or if you find from the evidence that said boy was competent to be intrusted with a dangerous weapon, then you should find for the defendant."

By the fourth and fifth assignments of error certain portions of the Court's charge are complained of as error.

We have examined the portions of the charge referred to in the assignments of error, and have reached the conclusion that when they are read in connection with the entire charge, there is no error in them.

Plaintiffs argue that T.C.A. § 37-12-102 and which limits the "recovery" refers only to the words "shall be entitled to recover" in the preceding Section 37-12-101, and not to the words; "shall be liable" in the succeeding Section 37-10-103.

In *Bocock v. Rose,* 213 Tenn. 195, 373 S.W.2d 441 (1962), the Trial Court sustained a demurrer to the declaration (dismissed a complaint for failure to state a claim). The Supreme Court reversed and said:

> The plaintiff sued defendants jointly and severally, for $25,000.00 damages as a result of an alleged assault and battery made upon the person of plaintiff, without cause or provocation, by the minor sons of defendants. The declaration alleged defendants had a duty to discipline their minor sons when they have knowledge of said sons' propensities to assault others; that defendants knew or should have known their sons had such propensity to assault and batter others; that defendants having such knowledge had failed to restrain their sons; that plaintiff's injuries and damages were due to the assault upon him by defendants' sons; and that as direct result of defendants' failure to restrain or discipline their sons plaintiff was injured.
> - ---
> [1]    The question for decision is whether this declaration states a cause of action; or more particularly whether defendants owe plaintiff a duty to supervise and control their minor sons under the circumstances alleged. Construing the declaration in its most favorable light such would appear to state a cause of action; if there is such a duty as alleged. Otherwise the declaration will fail.
> - ---
> Although the present case is apparently one of first impression, two cases have been cited in the briefs which are

said to be controlling in Tennessee. An analysis of these cases indicates they are not controlling. *Highsaw v. Creech*, 17 Tenn. App. 573, 69 S.W.2d 249 (1933) and *Smith v. Salvaggio*, 4 Tenn. Civ. App. 727 (1914), the cases relied upon, are situations involving parents' negligence for allowing minors to possess weapons, an air rifle in Highsaw and a .22 rifle in Smith. These cases are not in point with a situation involving a parent's negligence in failing to restrain a minor who has a known propensity to assault, except, as perhaps, as an indication there may be parental liability in some instances.

[4] We find and so hold parents may be held liable for the dangerous habits of their minor children causing injuries and damages to others, when, (1) the parent has opportunity and ability to control the child, and (2) the parent has knowledge, or in the exercise of due care should have knowledge, of the child's habit, propensity or tendency to commit specific wrongful acts, and (3) the specific acts would normally be expected to cause injury to others, and (4) the parent fails to exercise reasonable means of controlling or restraining the child.

The complaint in *Bocock v. Rose* was for $25,000.

In *M.C.I. Communications Corporation v. Bonnell*, Tenn. App. 1989, unpublished, this Court said:

A telecommunications corporation filed this action against a juvenile and his father for damages arising from the juvenile's use of computer equipment to invade the plaintiff's telephone system and obtain confidential authorization codes assigned to the plaintiff's customers. This appeal presents two issues: (1) the amount of damages recoverable against the juvenile; and (2) what liability, if any, the father has for the conduct of his minor son.

- ---

Using an inexpensive computer, the proper software program, and a telephone modum, sixteen-year-old Andrew Bonnell had identified at least seventy-six operational MCI codes; these codes would allow Andrew Bonnell to make long distance calls and have them billed to MCI customers.

- ---

Andrew Bonnell entered a guilty plea to the charge. The juvenile court placed him on probation and ordered him to pay restitution of $600, the maximum amount that could be ordered by the juvenile court. The $600 was subsequently paid to and received by MCI.

On November 12, 1989, MCI filed this action against Andrew Bonnell.

- ---

Richard J. Bonnell was sued under Tenn. Code Ann. Sec. 37-10-101 (Supp.1988), which makes the parents of a minor liable under certain circumstances for the damages caused by the minor.

- ---

MCI contends that *Tenn. Code Ann. Sec. 37-10-101* should be interpreted to make custodial parents strictly liable up to $10,000 for the acts of a child who willfully or maliciously injures another person or property. Under Tenn. Code Ann. *Sec. 37-10-103*, according to MCI, a parent or guardian would be liable to an unlimited extent for negligently failing to control a child's known tendency to commit wrongful acts. We are persuaded, however, that the two sections should be read together; thus *Sec. 37-10-103* provides a defense of reasonable care to the liability imposed in *Sec. 37-10-101*.

The legislature's first departure from the common law rule of non-liability of a parent for the torts of a child came in chapter 76 of the Public Acts of 1957. That act provides:

Section 1. Be it enacted by the General Assembly of the State of Tennessee, That any municipal corporation, county, township, village, school district or department of the State of Tennessee, or any person, or any religious organization, whether incorporated or unincorporated, shall be entitled to recover damages in an action in assumpsit in an amount not to exceed three hundred dollars ($300.00) in a court of competent jurisdiction from the parents or guardian of the person of any minor under the age of 18 years, living with the parents or guardian of the person who shall maliciously or willfully destroy property, real, personal or mixed, belonging to such municipal corporation, county, township, village, school district or department of the State of Tennessee or persons or religious organizations.

Section 2. Be it further enacted, That the recovery shall be limited to the actual damages in an amount not to exceed $300.00 in addition to taxable court costs.

Section 3. Be it further enacted, that no recovery shall be had if the parent or guardian of the person shows due care and diligence in his care and supervision of such minor child.

We think it is clear that section 3 of the original act provided a defense of due care and diligence to the liability imposed in section 1. The legislature amended section 1 and 2 in 1969 by raising the amount recoverable to $2,500 and changing the cut-off age for liability to twenty-one years. 1969 Tenn. Pub. Acts ch. 170. In 1976, the amount recoverable was increased to $5,000 and the cut-off age was reduced to eighteen years. 1976 Tenn. Pub. Acts ch. 408. In 1981, the legislature passed an amendment of a more substantial nature. In the caption to chapter 161 of the Public Acts of 1981, the legislature termed its action:

An act to increase the amount of recovery against a parent or guardian for the act of a minor child; to modify the

<u>defense</u> to such a suit; and to amend Tennessee Code Annotated, Title 37, Chapter 10. (Emphasis added)

The substantive part of the amendment raised the amount receivable to $10,000.00 and replaced section 3 of the original act with most of what is now *Tenn. Code Ann. Sec. 37-10-103*. The only other amendments to *Tenn. Code Ann. Secs. 37-10-101--37-10-103* came in 1985 when the legislature included personal injuries caused by the minor child in addition too the property damages that had previously been covered. 1985 Tenn. Pub. Acts ch. 434.

**6**. Contrary to the position of MCI, it seems clear that the legislature, from 1975 to the present, has considered *Tenn. Code Ann. Sec. 37-10-103* as relating back to *Tenn. Code Ann. Sec. 37-10-101*. Not one of the amendments we have cited, in the caption or the body of the act, has mentioned imposing strict liability on the parents of a minor child for harm caused by the child. The reference in the caption of the 1981 amendment to "the defense to such a suit" can only refer to *Sec. 37-10-103*. We think that a dramatic shift away from the common law rule of non-liability of the parent for the tortious conduct of a child and away from the prior statutory treatment given to the same subject would have been attended by some signal of intent from the legislature. Since MCI did not allege that Richard Bonnell knew of his son's activities or propensities and did not furnish any affidavits or other proof from which such an inference could be drawn, the trial judge was correct in granting summary judgment to the father.

The complaint in this case alleges that the defendant parents were aware that their son had a history of anti-social and criminal behavior, that he aspired to be a gangster, and actively associated with a violent gang. The complaint further alleges that said parents negligently failed to investigate the information received or to take any action thereon.

Defendants' motion for judgment on the pleadings adds nothing to the statement of the complaint, and is the equivalent of the demurrer in *Bocock v. Rose*.

This Court concludes that the complaint states a common law cause of action against the parents of Sean Jordon to which the limiting statute is inapplicable.

Accordingly, the judgment of the Trial Court is reversed. Costs of this appeal are taxed against the appellees. The cause is remanded to the Trial Court for further proceedings.

**REVERSED AND REMANDED**.


_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION


CONCUR:


_____
BEN H. CANTRELL, JUDGE


_____
WILLIAM B. CAIN, JUDGE