George Bradford Bocock

*v.*

Mr. and Mrs. Kenneth Rose, Sr., et al.

373 S.W.2d 441.

(*Nashville,* December Term, 1962.)

Opinion filed December 5, 1963.

Robert H. Polk, Nashville, for plaintiff in error.

Hayes & Swafford, Winchester, Clinton H. Swafford, Winchester, of counsel, for defendants in error.

■■■■■■■■■■■■■■■■■■■■■■■■■■

Mr. Justice Dyer delivered the opinion of the Court.

In this opinion George Bradford Bocock will be referred to as plaintiff. Mr. and Mrs. Kenneth Rose, Sr., Mr. and Mrs. Ben Rose and Mr. and Mrs. Ray Garrett, Sr., as defendants.

The plaintiff sued defendants jointly and severally, for $25,000.00 damages as a result of an alleged assault and battery made upon the person of plaintiff, without cause or provocation, by the minor sons of defendants. The declaration alleged defendants had a duty to discipline their minor sons when they have knowledge of said sons' propensities to assault others; that defendants knew or should have known their sons had such propensity to assault and batter others; that defendants having such knowledge had failed to restrain their sons; that plaintiff's injuries and damages were due to the assault upon him by defendants' sons; and that as direct result of defendants' failure to restrain or discipline their sons plaintiff was injured.

Defendants filed a demurrer to this declaration which was sustained by the Trial Judge and plaintiff has seasonably appealed to this Court.

■ The question for decision is whether this declaration states a cause of action; or more particularly whether defendants owe plaintiff a duty to supervise and control their minor sons under the circumstances alleged. Construing the declaration in its most favorable light such would appear to state a cause of action; if there is such duty as alleged. Otherwise the declaration will fail.

In *Norton v. Payne,* 154 Wash. 241, 281 P. 991 (1929) an action was brought against the parents of a child who had injured a second child. The appellate court in this case said:

"While it is also true that the parents did not actually participate in the particular tort here in controversy, they did know of the habit of their child of striking other children with sticks. They were bound to know that was a habit liable to cause injury to other children, especially smaller children. No one could be so familiar with the habit of a child of that age as the parent, and while the parent cannot be held to the degree of liability of one harboring a vicious dog after notice of its viciousness, or a wild animal, we think parents should be held responsible and liable for a dangerous habit of a child which they have knowledge and take no steps to correct, or restrain. It is that which constitutes the negligence on the part of the parent." 281 P. at 992.

In *Ryley v. Lafferty,* 45 F.2d 641 (9 Cir. 1930), the complaint against the parents alleged the defendants' son's vicious disposition, his habit of beating smaller boys, the parents' knowledge of such a habit, their failure to restrain their son, and their failure to heed the admonitions of other parents who knew of the child's habit which it was alleged amounted to encouraging the

child. The Court in overriding a demurrer to the complaint holding that there was a cause of action stated:

"* * * Yet the principle applicable to the facts alleged in this case is that the parents are liable if it appears that they knew that their child was guilty of committing the particular kind of tort habitually and encouraged the child, as alleged, and made no effort to correct or restrain him." 45 F.2d at 642.

The language in the Ryley case that the parents encouraged the child is misleading, as it is apparent any encouragement was due to the failure to restrain the child when his parents had knowledge of his dangerous habit.

In *Condel v. Savo,* 350 Pa. 350, 39 A.2d 51, 155 A.L.R. 81 (1944) the Court dealing with a similar situation presented in the case at bar said:

"Mere knowledge by the parents of the child's mischievous and reckless disposition is not enough to make them liable * * * but their liability arises from failure to exercise the control which they have over their child, when they know, or in the exercise of due care should know, that injury to another is a natural and probable consequence, for such failure to act and restrain the child amounts to an approval and sanction of, or consent to, his acts by the parents." 39 A.2d at 53.

*Bieker v. Owens,* 234 Ark. 97, 350 S.W.2d 522 (1961) was a suit against parents for an alleged assault by their child upon another child. The Supreme Court in Arkansas said:

"Since each human mind and personality is exclusively that of the individual possessing it, it would be unrea-

sonable to place an absolute responsibility for the acts of another on any person. But where the parent (1) has the opportunity and ability to control a minor, and (2) has knowledge of the tendency or proclivity of the minor to commit acts which could normally be expected to cause injury to others, and (3) after having such opportunity, ability and knowledge has failed to exercise reasonable means of controlling the minor or appreciably reduce the likelihood of injury to others because of the minor's acts, the parent should be made to respond to those who have been injured by such acts of the minor.'' 350 S.W.2d 524

''It is within reason and good logic to say that the parent has a responsibility to control minor children while they are in their formative years. For while they are not in the custody of the parents, absent any official action to the contrary, no other source of control may be found.'' 350 S.W.2d 524

The cases of *Landis v. Condon*, 95 Ohio App. 28, 116 N.E.2d 602 (1952) and *Caldwell v. Zaher*, 344 Mass. 590, 183 N.E.2d 706 (1962) are recent cases where parents have been held liable for their children's willful assaults, when the parents knew of the children's propensities to assault others, but failed to take any steps to correct or restrain the children.

67 C.J.S. Parent and Child sec. 68 has this to say:

''As a general rule, a parent may be liable for an injury which is caused directly by the child, where the negligence of the parent has made it possible and probable that such injury would so occur.

''* * * While mere knowledge by the parent of a child's mischievous and reckless or heedless or vicious dis-

position is not of itself sufficient to impose liability with respect to torts of the child, according to some authorities, liability of the parent arises from failure to exercise control over the child where the parent knows, or, in the exercise of due care, should know, that injury to another is a natural and probable consequence of such failure, and the parent may be liable for negligence in causing the child to become dangerous and in not attempting to restrain the child, or for failure to correct or restrain the child where the parent has knowledge of a dangerous habit of the child which is likely to cause injury to others.

''Generally speaking, liability of the parent is based on the rules of negligence rather than the relationship of parent and child. 'Negligence' in this connection has been regarded as a relative term and the duty imposed on the parent as dependent on the particular circumstances. In accordance with rules applicable in negligence cases generally, * * * the negligence of the parent must have been the proximate cause of the injury. In other words, the injury must have been the natural and probable consequence of the negligent act, that is, a consequence which, under the surrounding circumstances, might and ought reasonably to have been foreseen as likely to flow from such act. In order to render a parent liable, his or her negligence in the exercise of parental supervision must have some specific relation to the act of which complaint is made, and liability may not be predicated on a failure to supervise where supervision would not have rendered the parent aware of the possibility of the tortious conduct of the child.

''The distinction has been made that any liability of the parent is for his own fault and not for the fault of

the child, and the fact that the child is liable for the particular tort does not prevent the imposition of liability on the parent for his negligence with respect to such tort.''

■ There are three jurisdictions which would apparently hold the declaration in the case at bar would not state a cause of action. They are Missouri, Kentucky and Ontario. See *Baker v. Haldeman*, 24 Mo. 219, 69 Am. Dec. 430 (1857) ; *Paul v. Hummel*, 43 Mo. 119, 97 Am.Dec. 381 (1868) ; *Haunert v. Speier*, 214 Ky. 46, 281 S.W. 998 (1926) ; *Thibodeau v. Cheff*, 24 Ont.L. Rep. 214 (1911) ; *Corby v. Foster*, 29 Ont. L.Rep. 83 (1913). The Missouri cases apparently rely upon the common law rule, that a parent is not liable for the torts of his child. The Kentucky court speaks of a principal-agent relationship between parent and child, or the child must be a ''conduit'' of the parent's negligence, before there is any liability. In the Kentucky case cited the court said the ''conduit'' theory would not apply since the son was not insane or otherwise mentally irresponsible. The Ontario Court also relied upon the fact of the child's irresponsible nature and mental incapacity in finding liability.

■ The courts on this matter speak in terms of a parent being liable for the child's torts, which suggest vicarious liability based on the family relationship. This is not the case. The parent is actually being held liable for his own negligence which is the proximate cause of the injury. The parent-child relationship does not make the parent liable in and of itself. This distinction is well stated in 43 Yale Law Journal 893, as follows :

''The relationship of parent and minor child affords a sufficient basis for the affirmative duty on the part

of the parent to exercise his parental control to prevent the child from intentionally or negligently harming others. Here again, the relationship does not make the parent liable as such. He is, however, liable for his own torts, and this liability may arise out of the failure to perform definite acts to control the child when, as a reasonable parent, he should recognize that such control is necessary to prevent the child's injuring third persons." 43 Yale L.J. at 893.

Although the present case is apparently one of first impression, two cases have been cited in the briefs which are said to be controlling in Tennessee. An analysis of these cases indicates they are not controlling. *Highsaw v. Creech,* 17 Tenn.App. 573, 69 S.W.2d 249 (1933) and *Smith v. Salvaggio,* 4 Tenn.Civ.App. 727 (1914), the cases relied upon, are situations involving parents' negligence for allowing minors to possess weapons, an air rifle in Highsaw and a .22 rifle in Smith. These cases are not in point with a situation involving a parent's negligence in failing to restrain a minor who has a known propensity to assault, except, as perhaps, as an indication there may be parental liability in some instances.

■ We find and so hold parents may be held liable for the dangerous habits of their minor children causing injuries and damages to others, when, (1) the parent has opportunity and ability to control the child, and (2) the parent has knowledge, or in the exercise of due care should have knowledge, of the child's habit, propensity or tendency to commit specific wrongful acts, and (3) the specific acts would normally be expected to cause injury to others, and (4) the parent fails to exercise reasonable means of controlling or restraining the child.

The action of the Trial Judge in sustaining the demurrer is reversed and the cause remanded for further proceedings not inconsistent with this opinion.