IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE

## ADOLPH C. LAVIN, ET AL. v. ROSS JORDON, ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 96C-1475     Hon. Barbara N. Haynes, Judge**

**No. M1997-00259-SC-R11-CV  —  Decided April 24, 2000**
**FOR PUBLICATION**

The nature of this appeal regards the amount of damages recoverable in an action against parents for the intentional damage caused by their children. More specifically, we granted this appeal to determine whether Tennessee Code Annotated section 37-10-103(a) represents a codification of the common law tort allowing unlimited damages, or whether section 37-10-103(a) merely sets forth the circumstances under which parents may be held liable and is therefore subject to the statutory cap on damages contained in section 37-10-102. For the reasons stated herein, we hold that the legislature intended for section 37-10-103(a) to set forth the basis of parental liability and not to provide for an independent cause of action. We further hold that the common law tort of negligent control and supervision of children, as recognized by Bocock v. Rose, 213 Tenn. 195, 373 S.W.2d 441 (1963), has been superseded by section 37-10-103 when the damage caused by the child was intentional or malicious. As such, any recovery against parents for the intentional or malicious harm caused by their children may not exceed $10,000 in addition to taxable court costs. We are constrained to reverse the judgment of the Court of Appeals and remand this case to the trial court for further proceedings consistent with this opinion.

**Tenn. R. App. P. 11 Application for Permission to Appeal; Judgment of the Court of Appeals Reversed, Case Remanded to Davidson County Circuit Court.**

BARKER, J., delivered the opinion of the court, in which ANDERSON, C.J., and DROWOTA and HOLDER, JJ., joined. Birch, J., filed a dissenting opinion.

John L. Norris, Nashville, Tennessee, for Appellants, Ross Jordon, Susan Jordon, and Sean Jordon.

Charles R. Ray, Nashville, Tennessee; Jeffery S. Frensley, Nashville, Tennessee, for Appellees, Adolph C. Lavin and Jean Lavin.

### OPINION

This case arises out of the shooting death of Troy Lavin, who was the son of the plaintiffs, Adolph and Jean Lavin. On June 29, 1995, Troy delivered a pizza to the Nashville home of the defendants, Ross and Susan Jordon. Shortly after his arrival at the defendants' house, Troy was

killed by multiple shots from a .22 caliber rifle fired by Sean Jordon, the minor son of the defendants. Sean Jordon, who later pled guilty to second-degree murder, was previously unacquainted with Troy.

On April 18, 1996, the plaintiffs filed a complaint in the Davidson County Circuit Court alleging that the defendants were liable for the acts of their son pursuant to the common law tort of negligent supervision and Tennessee Code Annotated sections 37-10-101 and -103. More specifically, the complaint alleged that the defendants were negligent in failing to control and police Sean Jordon despite their knowledge that Sean possessed weapons. According to the complaint, the defendants were informed by Mrs. Frances Garrison that Sean broke into her home and stole several rifles and shotguns. The complaint also alleged that Susan Jordon later overheard a telephone conversation in which her son admitted to stealing the weapons from Mrs. Garrison and hiding them near his house. Sean Jordan later admitted that the .22 caliber rifle used to kill Troy Lavin was one of the weapons he stole from Mrs. Garrison.

The complaint further alleged that the defendants had knowledge that their son possessed a previous "history of assaultive, violent, anti-social criminal behavior," as evidenced by Sean having been previously declared a delinquent child for assaulting a minor and for assaulting and raping a school mate. The complaint also alleged that even though the defendants knew that Sean aspired to be a "gangster" and that he was actively associated with a violent gang, they nevertheless failed to take steps to fully investigate the theft of the weapons or to reasonably control their son. The plaintiffs sought compensatory and punitive damages in the amount of two-million dollars ($2,000,000.00).

On June 25, 1997, the defendants filed a motion for judgment on the pleadings arguing that according to Tennessee Code Annotated sections 37-10-101, -102, and -103, the maximum potential liability of the defendants was $10,000. After a hearing, the trial court granted the defendant's motion and held that the plaintiffs' recovery was limited to $10,000. The plaintiffs then filed a motion for interlocutory appeal, which was granted by the trial court and by the Court of Appeals.

The Court of Appeals reversed the decision of the trial court and held that the plaintiffs had stated a "common law cause of action against the parents of Sean Jordon to which the limiting statute is inapplicable." The Court of Appeals stated that while damages awarded pursuant to the parental liability statute were capped at ten-thousand dollars, the common-law cause of action for the same tort was unaffected by the statute and permitted the parents to seek full recovery. The defendants then sought appeal to this Court arguing that sections 37-10-101, -102, and -103 limited the defendants' liability for all claims of negligent control and supervision of minor children to the plaintiffs' actual damages not exceeding $10,000. We agree and hold that the common law tort of negligent control and supervision of minor children has been superseded by statute where the acts of the child are intentional or malicious, and we therefore reverse the judgment of the Court of Appeals.

## STANDARD OF APPELLATE REVIEW

Because this case was dismissed on a motion for judgment on the pleadings pursuant to Tennessee Rule of Civil Procedure 12.03, all well-pleaded facts and all reasonable inferences drawn therefrom must be accepted as true. See McClenahan v. Cooley, 806 S.W.2d 767, 769 (Tenn. 1991). As such, the issue before this Court is whether Tennessee Code Annotated sections 37-10-101, -102, and -103 operate to limit the plaintiff's potential recovery in this case. Id. Construction of a statute and its application to the facts of the case is an issue of law, see Ganzevoort v. Russell, 949 S.W.2d 293, 296 (Tenn. 1997), and our standard of review, therefore, is *de novo* without any presumption of correctness given to the trial court's conclusions of law. See, e.g., Union Carbide Corp. v. Huddleston, 854 S.W.2d 87, 91 (Tenn. 1993).

## ANALYSIS

Because resolution of this case turns upon the construction given to the parental liability statutes, it is necessary to start our analysis with a review of these statutes. The current text of these statutes is as follows:

37-10-101. **Recovery for injury or damage by juvenile**. —

Any municipal corporation, county, town, village, school district or department of this state, or any person, or any religious organization, whether incorporated or unincorporated, shall be entitled to recover damages in an action in assumpsit in an amount not to exceed ten thousand dollars ($10,000) in a court of competent jurisdiction from the parents or guardian of the person of any minor under eighteen (18) years of age, living with the parents or guardian of the person, who maliciously or willfully causes personal injury to such person or destroys property, real, personal or mixed, belonging to such municipal corporation, county, township, village, school district or department of this state or persons or religious organizations.

37-10-102. **Limitation on amount of recovery.** —

The recovery shall be limited to the actual damages in an amount not to exceed ten thousand dollars ($10,000) in addition to taxable court costs.

37-10-103. **Circumstances under which parent or guardian liable.** —

(a)     A parent or guardian shall be liable for the tortious activities of a minor child that cause injuries to persons or property where the parent or guardian knows, or should know, of the child's tendency to commit wrongful acts which can be expected to cause injury to persons or property and where the parent or guardian has an opportunity to control the child but fails to exercise reasonable means to restrain the tortious conduct.

(b)     A parent or guardian shall be presumed to know of a child's tendency to commit wrongful acts, if the child has previously been charged and found responsible for such actions.

Tenn. Code Ann. §§ 37-10-101 to -103 (1996 & Supp. 1999).

## I.

The plaintiffs first argue that section 37-10-103 represents a codification of the common law tort of negligent control and supervision of children and that any action commenced under this section is not subject to the statutory cap on damages in section 37-10-102. The defendants, however, argue that section -103 is not an independent cause of action and that the section only serves to set forth the circumstances under which a parent may be held liable for the acts of their children as provided in section 37-10-101. According to this interpretation, the section -102 cap on damages would apply to limit the amount of any recovery.

When construing or interpreting statutes, the "essential duty" of this Court is "to ascertain and carry out the legislature's intent without unduly restricting or expanding a statute's coverage beyond its intended scope." See, e.g., Premium Fin. Corp. of Am. v. Crump Ins. Servs. of Memphis, Inc., 978 S.W.2d 91, 93 (Tenn. 1998). In so doing, we are to examine the "natural and ordinary meaning of the language used, without a forced or subtle construction that would limit or extend the meaning of the language." See, e.g., Tuggle v. Allright Parking Sys., Inc., 922 S.W.2d 105, 107 (Tenn. 1996). Where the language of the statute is clear and unambiguous, then this Court will give effect to the statute according to the plain meaning of its terms. See State ex rel. Earhart v. City of Bristol, 970 S.W.2d 948, 951 (Tenn. 1998).

After a careful review of the text of the statutes, we conclude that the plain language does not clearly resolve the issue of whether section -103 represents a separate cause of action that permits unlimited damages. In fact, the language of the statute seems to provide support for both positions. For example, the absence of a statutory cap in section -103, along with the presence of a statutory cap in sections -101 and -102, certainly lends credibility to the plaintiffs' argument that section -103 constitutes an independent cause of action whose damages are not limited. On the other hand, the actual language of section -103 seems only to provide the circumstances under which parents are liable when the criteria of section -101 are satisfied. Further, the inclusion of section -103 in the same chapter and part as sections -101 and -102 is certainly evidence that section -103 was not intended to operate as a separate cause of action.

When the plain language of the statute is reasonably capable of conveying more than one meaning, the statute is rendered ambiguous, and the intent of the legislature cannot be reliably derived from the language alone. When statutes are ambiguous, the legislative intent may be derived from the "subject matter [of the statute], the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its

enactment." See State v. Lewis, 958 S.W.2d 736, 739 (Tenn. 1997) (citing Mascari v. Raines, 220 Tenn. 234, 239, 415 S.W.2d 874, 876 (1967)).

We find that the history and purpose of the parental liability statute are particularly relevant in assessing the scope and operation of section 37-10-103. At common law, parents could not be held liable in the absence of a statute for the intentional torts committed by their children. See Nichols v. Atnip, 844 S.W.2d 655, 658 (Tenn. Ct. App. 1992); see also Bocock v. Rose, 213 Tenn. 195, 201, 373 S.W.2d 441, 444 (Tenn. 1963). Instead, the common law held that because a child was considered to be a separate legal entity, the child was actually responsible for his or her own torts, and any remedy sought had to be satisfied by the child personally. Nevertheless, because children are usually not financially able to satisfy a judgment, victims of juvenile torts under the common law rule typically went uncompensated. See W. Page Keeton, et al., Prosser and Keeton on Torts § 123 (5th ed. 1984).

To alleviate the harshness of this common law rule with respect to plaintiffs, virtually all state legislatures passed statutes allowing plaintiffs to seek recovery against negligent parents or guardians of a juvenile tortfeasor. Id. In 1957, the Tennessee General Assembly first enacted a statute allowing for a very limited recovery against parents or guardians for intentional property damage caused by their children. The text of the original 1957 statute read as follows:

> Section 37-1001. Any municipal corporation, county, township, village, school district or department of the State of Tennessee, or any person, or any religious organization, whether incorporated or unincorporated, shall be entitled to recover damages in an action in assumpsit in an amount not to exceed three hundred dollars ($300.00) in a court of competent jurisdiction from the parents or guardian of the person of any minor under the age of 18 years, living with the parents or guardian of the person who shall maliciously or willfully destroy property, real, personal or mixed, belonging to such municipal corporation, county, township, village, school district or department of the State of Tennessee or persons or religious organizations.
>
> Section 37-1002. The recovery shall be limited to the actual damages in an amount not to exceed $300.00 in addition to taxable court costs.
>
> Section 37-1003. No recovery shall be had if the parent or guardian of the person shows due care and diligence in his care and supervision of such minor child.

Tenn. Code §§ 37-1001 to -1003 (originally enacted as 1957 Tenn. Pub. Acts ch. 76).

As evidenced by the words "no recovery shall be had if," section 37-1003 of the original statute appears to have only limited the circumstances under which liability may be imposed by section 1001; it did not contemplate a separate cause of action against the parents for their negligence. Indeed, if read in isolation and apart from section -1001, section -1003 could not constitute an independent cause of action for the simple reason that it did not proscribe any wrong for which remedy may be sought. As such, it is clear that all three sections of the 1957

-5-

statute were intended to apply to the same cause of action and that each section of that statute should be read in conjunction with the others.

The next major substantive amendments to the parental liability statute came in 1981.[1]  In that year, the language of section 37-1003 was significantly changed to further define the circumstances under which parents or guardians are held liable for the acts of their children.  In so doing, The General Assembly deleted the original section -1003 in its entirety and substituted the following language in its place:

> A parent or guardian shall be liable for the tortious activities of a minor child that causes injuries to property where a parent or guardian knows, or should know, of the child's tendency to commit wrongful acts which can be expected to cause injury to property, and where the parent or guardian has an opportunity to control the child but fails to exercise reasonable means to restrain the tortious conduct.

> A parent or guardian shall be presumed to know of a child's tendency to commit wrongful acts, if the child has previously been charged and found responsible for such actions.

1981 Tenn. Pub. Acts ch. 160, § 3.[2]

As the legislative debates in both the Senate and House of Representatives indicate, the sponsors of the bill amending section 37-1003 did not intend for the new language of section -1003 to establish a separate cause of action against parents; rather, the sponsors only intended to clarify the circumstances under which parents could be held liable.  For example, the primary sponsor of the bill in the House of Representatives, Representative Bobby Wood, stated that the intent of deleting the original section -1003 was to "replace it with three definitions of when a parent would be responsible for the actions of a child."[3]  The bill's sponsor in the Senate also stated that section 3 of the bill "changes the language in the Code" to clarify when parents would be held responsible.[4]  We also find significant that the title of the 1981 bill was "an act to

---

[1] The General Assembly did, however, make several minor changes to the law before 1981, such as raising the amount of damages recoverable and changing the age of the minor.  See 1969 Tenn. Pub. Acts ch. 170 (increasing the amount recoverable from $300 to $2,500 and extending parental liability until the child reaches age 21); 1976 Tenn. Pub. Acts ch. 408 (increasing the amount recoverable from $2,500 to $5,000 and re-establishing parental liability to extend to children under age 18).

[2] Section 1 of the same act also increased the statutory cap on liability from $5,000 to $10,000.  See 1981 Tenn. Pub. Acts ch. 160, § 1.

[3] See Tape H-C&R-1 (Mar. 5, 1981) (statement of Rep. Bobby Wood).

[4] See Tape S-80 (March 30, 1981) (statement of Sen. Tommy Burks).

increase the amount of recovery against a parent or guardian for the act of a minor, *to modify the defense to such suit*, and to amend Tennessee Code Annotated Title 37, Chapter 10." See 1981 Tenn. Pub. Acts ch. 160 (emphasis added).

With the exception of amendments in 1985 adding parental liability for personal injury as well as property damage,[5] section 37-1003, since re-codified as section 37-10-103, has remained substantively unaltered since 1981. As evidenced by the original language of the statute, by the language of the amended section, and by the legislative debates concerning the amended section, we hold that section 37-10-103 was intended only to set forth the circumstances under which parents could be held liable. In fact, we find no evidence that section 37-10-103 has ever been intended to provide for a cause of action separate and independent of that presently stated in section 37-10-101. Accordingly, the plaintiffs' argument in this respect is without merit.

## II.

The plaintiffs also argue that the 1981 and 1985 amendments did not supersede the common law with regard to parental liability as established by our decision in Bocock v. Rose, 213 Tenn. 195, 373 S.W.2d 441 (1963). Regretfully, we must again disagree. In Bocock, this Court held that although parents could not be held liable for the torts of their children merely because of the parent/child relationship, parents could be held liable for their own negligence in failing to exercise reasonable restraint upon a minor with a known propensity to commit assault. Acting to change the common law with respect to parental liability for personal injury caused by a child tortfeasor, this Court stated,

> We find and so hold parents may be held liable for the dangerous habits of their minor children causing injuries and damages to others, when, (1) the parent has opportunity and ability to control the child, and (2) the parent has knowledge, or in the exercise of due care should have knowledge, of the child's habit, propensity or tendency to commit specific wrongful acts, and (3) the specific acts would normally be expected to cause injury to others, and (4) the parent fails to exercise reasonable means of controlling or restraining the child.

Bocock, 213 Tenn. at 202, 373 S.W.2d at 445. Interestingly, the Court did not make reference to the 1957 statute or to the fact that the General Assembly had similarly modified the common law with respect to property damage, despite the fact that Bocock was decided six years after sections 37-1001, -1002, and -1003 were enacted.

When the General Assembly amended the parental liability statutes in 1981 and 1985, it extended parental liability for the intentional or malicious actions of minors to situations involving personal injury as well as property damage. See 1985 Tenn. Pub. Acts ch. 439. In so doing, the legislature seems to have taken the language directly from our decision in Bocock.

---

[5] See 1985 Tenn. Pub. Acts ch. 439.

We are not inclined to concede the extreme similarity in language to mere coincidence, because the "Legislature is presumed to know the state of the law on the subject under consideration at the time it enacts legislation." See, e.g., Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 899 (Tenn. 1992). Indeed, a close examination of the current language of section -103(a) imposing liability on parents for personal injury caused by their children reveals that it is virtually identical to our language in Bocock.[6]

While the General Assembly has plenary power within constitutional limits to change the common law by statute, see Southern Ry. Co. v. Sanders, 193 Tenn. 409, 415, 246 S.W.2d 65, 67 (1952), the "[r]ules of the common law are not repealed by implication, and if a statute does not include and cover such a case, it leaves the law as it was before its enactment." Monk v. Ramsey, 223 Tenn. 247, 252, 443 S.W.2d 653, 655 (1969). Nevertheless, "[w]hen there is a conflict between the common law and a statute, the provision[s] of the statute must prevail." Graves v. Illinois Cent. R. Co., 126 Tenn. 148, 158, 148 S.W. 239, 242 (1912).

In comparing the parental liability cause of action with our decision in Bocock, we are constrained to conclude that the basis of liability imposed by the statute and by our decision in Bocock are virtually identical with respect to intentional torts committed by children. Although parental liability under the 1957 appears to have been technically grounded in vicarious liability,[7] the plain language of the 1981 and 1985 amendments fundamentally changed the nature of the cause of action. Unlike the original version of section -1003, the current section -103(a) does not contain any language that would require the defendant to prove "due care and diligence." Instead, section -103(a) now states that "[a] parent or guardian shall be liable for the tortious activities of a minor child that causes injuries to persons or property where . . . ." As this language makes clear, lack of parental negligence is no longer merely a defense to liability; parental negligence is now the *basis* of that liability. In other words, unlike the original statute, plaintiffs now need to show more than the mere existence of a parent/child relationship to establish a prima facie case; plaintiffs must now show that the parents are actually at fault before any liability can attach.

---

[6] For example, both section 37-10-103(a) and Bocock impose liability when (1) the parents know or should know of the child's propensity to commit wrongful acts; (2) the parents have an opportunity to control the child; (3) the child's wrongful acts can be expected to cause injury to property; and (4) the parents fail to exercise reasonable means to restrain the child's tortious conduct.

[7] For example, to establish a prima facie case under the 1957 statute, the plaintiff did not need to show that the parents of the minor tortfeasor failed to exercise "due care and diligence"; rather, the plaintiff needed only to show that the minor "maliciously or willfully" destroyed property while living with his or her parents or guardians. The explicit language of section -1003 placed the burden of proof on defendants to show that they used "due care and diligence."

As a general rule of statutory construction, a change in the language of the statute indicates that a departure from the old language was intended. See Dunn v. Hackett, 833 S.W.2d 78, 81 (Tenn. Ct. App. 1992). Although the fundamental change in language is evidence that the legislature intended to change the operation of the statute, we are further persuaded that the legislature intended a substantive change because of the strong similarity between the language of section -103(a) and the language of our holding in Bocock v. Rose. Because the General Assembly sought to regulate by statute that which was already governed by common law, and because a conflict exists with respect to damages between the parental liability statute and the common law, we must hold that the statute prevails over the common law and that damages in this case are capped at $10,000.

## III.

We recognize that in construing statutes duly enacted by the legislature, it is our duty to ascertain and give effect to the intention and purpose of the legislature, even if the particular result reached is one that we find distasteful. Generally speaking, the "wisdom, or unwisdom[,] of a statute lies solely with the Legislature and is not the concern of the Court." Hoover Motor Express Co. v. Hammer, 201 Tenn. 270, 275, 298 S.W.2d 724, 726 (1957). We also recognize that this Court does not typically function as a forum for resolution of public policy issues when interpreting statutes, and that in such cases, we should seek to decide only the legal case or controversy presented by the particular parties before us. See Smith v. Gore, 728 S.W.2d 738, 747 (Tenn. 1987).

Nevertheless, we find that the result compelled by the statute in this case is particularly distasteful in that the plaintiffs, who have lost their son to a senseless act of malicious violence, are denied the opportunity to be made whole for their loss. If the plaintiffs are able to prove damages exceeding $10,000, then the present remedy is plainly inadequate and wholly insufficient to compensate the plaintiffs for the injury they have suffered. Perhaps the General Assembly will revisit the issue of whether the statutory cap on damages contained in section 37-10-102 provides an adequate and sufficient remedy, especially in cases when personal injury results in death.

## CONCLUSION

We hold that Tennessee Code Annotated section 37-10-103(a) does not establish an independent cause of action against parents for the intentional acts of their children. We also hold that the common law in this regard has been superseded by statute, at least in so far as intentional or malicious injury to persons or property is concerned. Consequently, the total amount of damages recoverable by the plaintiffs in this case based upon allegations of intentional conduct by the defendants' minor child is governed by Tennessee Code Annotated section 37-10-102. Although we recognize that the wisdom of certain statutes is generally a question for the General Assembly, the legislature may wish to reconsider the effect that section 37-10-102 has upon cases such as this one. The judgment of the Court of Appeals is reversed, and this case is

remanded to the Davidson County Circuit Court for further proceedings consistent with this opinion.

Costs of this appeal are assessed to the plaintiffs / appellees, Adolph and Jean Lavin.