IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 15, 2002 Session

## JO ANNE SILVERMAN v. KRSNA, INC.

**Appeal from the Circuit Court for Davidson County**
**No. 98C-649      Hamilton V. Gayden, Jr., Judge**

---

**No. M2001-01921-COA-R9-CV- Filed May 21, 2002**

---

A woman who was severely scalded by the water in a motel bathtub sued the motel owner under several theories. She filed a motion for partial summary judgment on her theory of negligence per se, arguing that the defendant had not complied with provisions of the 1994 plumbing code designed to prevent such injuries. The defendant responded that it did not have to comply with the 1994 code, because the plumbing system and hot water heaters in the motel were installed before 1994, and were in compliance with the codes in existence at the time of their installation. The trial court denied the summary judgment motion. The court also ruled that while the defendant was not required to comply with a provision of the 1994 code that mandated the installation of certain safety devices in hot water systems, it was required to comply with a provision that established a maximum water temperature setting of 120 degrees Fahrenheit. Because of the potential impact of its ruling on the ultimate outcome of this case, the court granted the parties permission to apply to this court for interlocutory appeal, which we granted. We affirm the denial of summary judgment, but reverse the trial court's ruling that makes part of the 1994 code retroactive.

### Tenn. R. App. P. 9 Appeal by Permission; Judgment of the Circuit Court
### Affirmed in Part; Reversed in Part; and Remanded

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN, J. and JEFFREY F. STEWART, SP. J., joined.

Randolph A. Veazey and Warren M. Smith, Nashville, Tennessee, for the appellant, KRSNA, Inc.

James S. Higgins and R. Lee Martin, Nashville, Tennessee, for the appellee, Jo Anne Silverman.

### OPINION

### I. A NEGLIGENCE COMPLAINT

Jo Anne Hice Silverman was registered at the Daystop Inn on White Bridge Road in Davidson County on March 10, 1997. Late at night, she decided to take a bath, and she turned on

the hot water faucet. After the tub had filled with hot water to a depth of three or four inches, Ms. Silverman realized she needed to add cold water. Sitting on the edge of the tub, she leaned over to turn the hot water off. She slipped and fell in, hitting her head. According to her complaint, she was only in the tub for a few seconds, but in that time she suffered severe and disabling burns over the right side of her body.

Ms. Silverman testified in deposition that the accident caused her extreme pain and shock, that she could not think clearly, and that she went in and out of consciousness over a period of hours. Finally, she called her mother, who came to the motel and called for an ambulance. Ms. Silverman was transported to Vanderbilt Medical Center, where she underwent numerous fluid infusions, skin grafts, and other procedures. The record contains 135 pages of medical bills generated by Ms. Silverman's treatment, which total over $488,000

Ms. Silverman's First Amended Complaint named a number of parties as defendants. These included Mr. Chandrakan Patel, doing business as Daystop Inn; Krsna, Inc., a Tennessee corporation operated by Mr. Patel; motel franchisor Days Inn of America; hot water heater manufacturer State Industries; and contractor Meyers Plumbing Company. The complaint asserted numerous theories of recovery, including negligence, res ipsa loquitur, product liability, strict liability and breach of implied warranty. A later amended complaint named Krsna, Inc. as the only defendant, and reduced the theories of recovery to three: ordinary negligence, res ipsa loquitur and negligence per se.

During the course of trial preparation, the parties took the depositions of Ms. Silverman, Mr. Patel, Jeffrey Guy, M.D., Bruce Shack, M.D., and Leighton Sissom, Ph.D., P.E. Mr. Patel testified that he purchased the motel in 1989; that he replaced the electric water heaters with gas appliances in 1992; and that he made no other alteration to the plumbing system. He also testified that in accordance with the instructions of the codes inspector, the hot water heaters at the motel were set somewhere between 120° F and 140° F.

Dr. Guy, the director of the Burn Center at Vanderbilt, testified that immersion in water with a temperature in excess of 150° F. can produce full-thickness or third degree burns, such as the ones Ms. Silverman suffered, within five seconds. Water at a temperature of 120° F. can produce the same injuries, but might require immersion for ten minutes or more.

On May 16, 2001, Ms. Silverman filed a Motion for Summary Judgment with regard to her claim of negligence per se. She claimed that the water temperature in the tub was in violation of "a local ordinance governing the maximum temperature of bath/shower water in a hotel establishment." She cited the Metro Plumbing Code, which adopts by reference most of the provisions of the 1994 Edition of the Standard Plumbing Code, including Section 613.1, which requires that individual scald prevention valves be installed on shower outlets, and that handle position stops be adjusted for a maximum mixed water outlet temperature of 120° F. There were apparently no Metro regulations regarding water temperatures prior to 1994.

After a hearing, the trial court denied the summary judgment motion, but ruled that the water temperature limitation of 120° F. may be retroactively applied to water heaters and plumbing fixtures installed prior to 1994, and that it is applicable to establish negligence per se. The court also ruled that the portion of the code that requires installation of scald prevention valves is not retroactive, and cannot be used to establish negligence per se.

The court declared that because of the potential impact of its ruling as to the retroactivity of the code upon the ultimate outcome of this case, it was appropriate to grant an interlocutory appeal, and to continue the case pending resolution of the appeal. Both parties subsequently filed applications in the Court of Appeals for permission to appeal under Rule 9, Tenn. R. App. P., which we granted.

## II.  THE PLUMBING CODE

The sole question we are called upon to decide in this interlocutory appeal is whether any part of Section 613.1 of the 1994 Standard Plumbing Code must be applied retroactively, thus furnishing a possible basis for a finding of negligence per se against the defendant. The section at issue reads in its entirety,

### 613.1  Shower Temperature Control Device

The temperature of mixed water to multiple (gang) showers shall be controlled by a master mixing valve or such showers shall be individually controlled by a scald preventative valve of the pressure balancing thermostatic or combination mixing valve type conforming to the standards listed in Table 613. The temperature of mixed water to individual showers and shower/bath combinations in all buildings shall be controlled by a scald preventative valve of the pressure balancing or thermostatic or combination mixing valve type. Handle position stops shall be adjusted in accordance with manufacturer's instructions at time of installation to a maximum mixed water outlet temperature of 120°F (93°C.)

The plaintiff insists that the entire section should be applied retroactively, including the requirement that anti-scald devices be installed on hot water outlets. The defendant contends that none of it should be applied retroactively, and that the trial court erred in ruling that he was required to adjust his water temperature settings to 120° F.

In determining the proper construction of a municipal ordinance, we must follow the same rules as those used for construing statutes. *Tennessee Manufactured Housing v. Metro Government of Nashville*, 798 S.W.2d 254 (Tenn. Ct. App. 1990). The most basic rule is "to ascertain and carry out the legislature's intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Daron v. Department of Correction*, 44 S.W.3d 478 (Tenn. 2001); *Lavin v. Jordan*, 16 S.W.3d 362 (Tenn. 2000).

When the language is clear and unambiguous, "legislative intent is to be ascertained from the plain and ordinary meaning of the statutory language used." *Gragg v. Gragg,* 12 S.W.3d 412 (Tenn. 2000). When the meaning of a statute is ambiguous or uncertain, other rules of construction come into play. The absence of any language directly addressing the retroactive effect of the plumbing code requires us to look at the code in light of these other rules.

One useful rule is that statutes relating to the same subject or sharing a common purpose must be construed together ("in pari materia") in order to advance their common purpose or intent. *LensCrafters, Inc. v. Sundquist* 33 S.W.3d 772 (Tenn. 2000); *Wilson v. Johnson County*, 879 S.W.2d 807 (Tenn. 1994). Section 613.1 and most of the other sections of the 1994 Plumbing Code were incorporated by reference into the Building Codes of Metropolitan Nashville and Davidson County. Section 16.12.020 of the Metro Code describes the scope of its application as follows: "[t]he provisions of this chapter shall apply to every plumbing installation and plumbing system, both new and existing, including, but not limited to, alterations, repairs, replacement and maintenance and to all plumbing devices, equipment, appliances, fixtures, fittings and appurtenances within the metropolitan government area."

The plaintiff relies upon the expansive language of Section 16.12.020, quoted above (and similar language found in Section 104.4.6 of the 1994 Standard Plumbing Code) to support her argument that when Section 613.1 is viewed together with the above provisions, it indicates retroactive application of the Section to all existing plumbing systems. She also argues that as ubiquitously used in the code, the terms "installation" and "plumbing installation" refer not only to the act of installing a new plumbing system or component, but also to any existing plumbing system.

While we agree that the code uses the terms "installation" and "plumbing installation" for both purposes, it appears to us that where Section 613.1 refers to the adjustment of handle position stops "at time of installation" that instruction cannot reasonably be construed as directing all property owners in Davidson County to adjust the temperature controls of their existing plumbing systems to the desired temperature. We also note that another code section indicates that when applying the code to existing buildings, a different approach is required than when applying it to new construction:

**101.5  Existing Buildings**

**101.5.1 General.** Alterations, repairs or rehabilitation work may be made to any existing structure, building, electrical, gas, mechanical or plumbing system without requiring the building, structure, plumbing, electrical, mechanical or gas system to comply with all the requirements of the technical codes, provided that the alteration, repair or rehabilitation work conforms to the requirements of the technical codes for new construction. The building official shall determine the extent to which the existing system shall be made to conform to the requirements of the technical code for new construction.

Section 101.5.1 is consistent with the general provision that the code apply to plumbing systems "both new and existing," but contradicts the plaintiff's implied argument that the entire code must always be uniformly applied to every system, regardless of its age or condition.

The plaintiff contends that by enforcing the 1994 code only when new construction or modifications to existing construction are involved, we reach an absurd result that leaves the public guessing as to the temperature of the water likely to flow from the taps in hotel and motel bathrooms. She also argues that such inconsistent treatment undermines the stated purposes of enacting the code, which are to ensure "health, sanitation, general public safety, and welfare." Metro Codes Section 16.12.109.

As a practical matter, however, there is no prohibition against the enactment of partial or piecemeal solutions to widespread problems. We note that the enforcement of the 1994 code on new construction and renovations makes use of existing procedures involving permits and inspections. To enforce the code uniformly against all property owners, including those whose plumbing systems were in compliance with the codes in existence at the time they were constructed, would require the creation of a whole new mechanism of enforcement, which would be far more expensive to the taxpayer, and far more intrusive on the rights of property owners than the existing system. While legislative bodies may possess the authority to create such mechanisms, there is no evidence that the Metro council chose to do so in this case.

Although he did not say so, perhaps the reason the trial judge drew a distinction between the code requirement of installing anti-scald devices, and that of adjusting water temperature settings is that one would involve the expenditure of money, while the other apparently would not. This may seem reasonable, but the deposition testimony of Professional Engineer Dr. Leighton Sissom indicates that beneficially regulating the temperature of water reaching the end user can actually be quite a complex matter, and that no single rule or setting can accomplish this in all cases.

Any remaining doubt about the proper interpretation of the ordinance in question can be resolved by application of another rule for construction of statutes: that the courts should give deference to the construction adopted by the agencies charged with their enforcement. *Riggs v. Burson,* 941 S.W.2d 44 (Tenn. 1997); *Jackson Express, Inc. v. Tennessee Public Service Commission*, 679 S.W.2d 942 (Tenn. 1984).

The record contains the affidavits of three Metro employees with authority over the agencies involved in plumbing installations. They all state unequivocally that Section 613.1 is not retroactively applicable. Charles Dornan is responsible for overseeing the inspection of all plumbing installations in Metro Davidson County. His affidavit states that Section 613.1 does not apply to any plumbing fixtures or valves that were installed prior to the adoption of the 1994 plumbing code, and that prior to that year no maximum water temperature for tub and shower combinations had been established.

James Daly is responsible for overseeing the inspection of all gas water heater and boiler installations in Davidson County. He stated that the two gas water heaters installed at the Daystop Inn in 1992 were inspected and approved at that time, and that Section 613.1 of the 1994 Code does not apply to gas water heaters installed in 1992. Manley Biggers is the Assistant Director of Codes for Nashville and Davidson County. His affidavit states that the 1994 Edition of the Standard Plumbing Code does not require an existing plumbing installation to be modified to comply with its terms and provisions.

In light of this uncontroverted testimony, and the lack of any provisions in the Metro Ordinance specifically addressing the question of retroactivity, it appears to us that the defendant was not required to modify or adjust his hot water system to comply with the 1994 plumbing code. We note that this ruling, while effectively eliminating the possibility of the plaintiff recovering for her injuries under a theory of negligence per se, has no effect on her remaining theories of negligence, nor on the defendant's affirmative defense of comparative fault.

## III.

We affirm the trial court's denial of summary judgment to the plaintiff on her claim for negligence per se. We reverse that portion of the court's order that held the maximum temperature provision of the 1994 Standard Plumbing Code to be retroactive. Remand this cause to the Circuit Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellee, Jo Anne Silverman.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.