IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 16, 2023 Session

## GABRIEL CALLEJA v. WHITNEY BRADFIELD

**Appeal from the Juvenile Court for Knox County**
**No. 177287    Timothy E. Irwin, Judge**

FILED
APR 17 2024
Clerk of the Appellate Courts
REc'd By _____

**No. E2022-01074-COA-R3-JV**

A mother sought to move to another state with her minor child. The child's father opposed the move and petitioned to be named the child's primary residential parent. The mother responded with a counter-petition seeking approval of the move and a modified parenting plan. Using the best-interest factors applicable to child custody disputes, the court granted the mother permission to relocate and modified the parties' parenting time accordingly. On appeal, the father argues the parental relocation statute applied and, regardless of which best-interest factors were used, the evidence preponderates against the court's best-interest finding. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Knox County Juvenile Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON II, J., joined.

Cecilia S. Petersen and R. Samuel English, Knoxville, Tennessee, for the appellant, Gabriel Calleja.

William A. Mynatt, Jr., Knoxville, Tennessee, for the appellee, Whitney Bradfield.

## OPINION

### I.

Gabriel Calleja ("Father") and Whitney Bradfield ("Mother") are the parents of a child, born in Tennessee in August 2017. After the unmarried parents parted ways, they agreed on a permanent parenting plan in which they would exchange the child every week.

They decided Mother would be the primary residential parent. She would have sole decision-making for the child's education and religious upbringing. But the parents would share joint decision-making as to non-emergency healthcare and extracurricular activities.

The parenting plan became untenable not long after Mother met Clayton C., a member of the United States Army, stationed at Fort Bragg, North Carolina. At first friends, the relationship later became romantic. So when Clayton C. received orders to relocate to Alabama, Mother decided to move with him. In December 2019, she gave Father notice of her intent to relocate with the child. *See* Tenn. Code Ann. § 36-6-108(a) (2021).

Father opposed Mother's relocation with the child. He filed a petition in opposition and requested modification of the parenting plan. Mother responded with her own counter-petition seeking approval of the relocation and to modify the parenting plan. *See id.* § 36-6-108(b). Trial of the competing petitions was continued several times over the following years due to the COVID-19 pandemic.

While awaiting trial, Mother and Father agreed to an interim modification of the parenting plan, which was reflected in an agreed order. Mother had moved in with Clayton C. in North Carolina because the pandemic delayed his relocation orders. Under the modification, Mother and Father exchanged the child every two weeks. And, although they disagreed over the child's vaccination schedule and doctors, they chose to continue sharing joint medical decision-making. But they explicitly agreed that "[n]either parent shall make major medical decision[s] without agreement of the other parent in writing" except in emergencies.

Nearly two years after entry of the agreed order, Mother filed a petition for contempt. She alleged that Father had willfully breached the provisions related to joint medical decision-making. According to Mother, Father had taken the child to be vaccinated without providing her advance notice as required. And Father had taken the child to a behavioral health clinic for at least six months without informing her or signing an information release. She only learned of the child's visits to the clinic when she mistakenly received a bill for the services. When she met with Father and a psychologist at the clinic, she learned that Father was also taking the child to another medical facility.

Mother's contempt petition also alleged that she and Father disagreed about the child's education. She had sole educational decision-making. But when she told Father of her plans to enroll the child in "Kindergarten Age 4" classes, he said he had already signed the child up for preschool and extracurricular activities near his home. And he informed her that he would be taking the child to a doctor for a wellness visit and certain vaccinations required by the preschool. Mother complained that the child had already completed the visit and vaccinations Father had scheduled.

2

At the hearing on the various petitions, the juvenile court heard testimony from Father, Mother, and Clayton C. Although the testimony covered many topics, a focus was on the therapy services Father had arranged for the child without Mother's knowledge. Father testified that he did not tell Mother that he was taking the child to therapy "on purpose." He felt she "was denying that [the child] need[ed] help." So he unilaterally decided to take the child to feeding therapy, speech therapy, and occupational therapy. At one point, he was taking the child to some form of therapy five days a week. And Father was getting parenting coaching from one of the clinics so he could learn to create a routine for the child at home. He paid for all of these sessions out of pocket.

Mother testified that she "didn't see any issues" with the therapy the child was receiving after she found out about it, but she "was unaware completely of anything they were doing" for months. When she first learned the child was receiving services, she paused them until she understood what was being provided.

Ultimately, the juvenile court approved Mother's relocation with the child and declined to find Father in contempt.[1] In determining whether relocation was in the best interest of the child, it used the best interest factors in the child custody statute. *See id.* § 36-6-106(a) (2021). In weighing the factors, the court was "strongly influenced by the Father's decision to place the Child in significant psychological and occupational therapy for a long period of time without consulting or informing the Mother." It found that "Father ha[d] stepped over the line by having the Child in an excessive amount of counseling for six months prior to the Mother becoming aware of it" and not informing Mother.

In light of the relocation, the court modified the parties' parenting time. *See id.* § 36-6-108(c)(3). Father's parenting time was reduced to 105 residential days each year. Among other things, he received every summer break, every spring break, and every fall break with the child. The court also ordered that the child be immediately evaluated by an independent expert for autism, speech, and occupational therapy, that the parents follow all expert recommendations, and that the child's therapy be consistent between Tennessee and Alabama.

## II.

On appeal, Father raises five issues for review. His first issue is that the court should have applied the parental relocation statute, Tennessee Code Annotated § 36-6-108, instead of the child custody statute, Tennessee Code Annotated § 36-6-106. His next three issues are, if the child custody statute applied, the court misapplied that statute's best interest

---

[1] Instead, the court found that Father's "actions ha[d] potentially been in contempt of the Court's Orders." And "Father [wa]s excessive in his manner and inclined to do more than he [wa]s entitled to do under the Orders of the Court." But "Father believe he ha[d] acted in the Child's best interest."

3

factors or that the evidence preponderates against the court's factual findings. For his final issue, Father contends application of the best-interest factors in the parental relocation statute would have yielded a different result.

## A.

In response to Father's first issue, Mother acknowledges that the juvenile court should have applied the parental relocation statute. And we reach the same conclusion. *See Lavin v. Jordon*, 16 S.W.3d 362, 364 (Tenn. 2000) (holding that the interpretation and application of a statute to the facts of a case is a question of law subject to de novo review). The statute applied by the court, Tennessee Code Annotated § 36-6-106, applies to an initial custody determination or to modifications of a permanent parenting plan. *See Armbrister v. Armbrister*, 414 S.W.3d 685, 694, 697-98 (Tenn. 2013); Tenn. Code Ann. §§ 36-6-404(b), -405(a) (2021). But "if a parent who is spending intervals of time with a child desires to relocate outside the state or more than fifty (50) miles from the other parent within the state," the parental relocation statute, Tennessee Code Annotated § 36-6-108, applies. Tenn. Code Ann. § 36-6-108(a).

Father contends that application of the wrong statute warrants reversal of the juvenile court's decision. Mother counters that the best-interest factors in the child custody statute "parallel and encompass" the factors in the parental relocation statute. Mother also notes that, at the beginning of trial, the court advised counsel that it was applying the factors in the child custody statute, and neither party objected.

The best interest of the child standard lies at the heart of both statutes. Under the child custody statute, in any "proceeding requiring the court to make a custody determination regarding a minor child," the court makes its custody "determination . . . on the basis of the best interest of the child" consistent with the factors set out in the statute. *Id.* § 36-6-106(a). Similarly, under the parental relocation statute, the court "determin[es] whether relocation is in the best interest of the minor child" using statutory factors. *Id.* § 36-6-108(c). Some of the parental location best-interest factors are unique to that statute. *See id.* § 36-6-108(c)(2). But the court may also use the factors in the child custody statute in determining whether relocation is in the child's best interest. *Id.* § 36-6-108(c)(2)(H).

Here, we conclude any error in applying the child custody statute was harmless. Although it did not reference the parental relocation statute, the juvenile court considered whether Mother's relocation was in the child's best interest. And it fashioned a modified permanent parenting plan using a best interest of the child standard. So the court fulfilled the essential requirement of the parental relocation statute by applying the factors of the child custody statute. *Cf. Dayhoff v. Cathey*, No. W2016-00377-COA-R3-JV, 2016 WL 4487813, at *7 (Tenn. Ct. App. Aug. 25, 2016) (concluding that there was no reversible error where the court applied the best interest of the child standard despite erroneously

4

using the parental relocation statute); *In re Lukas S.-M.*, No. M2015-01367-COA-R3-JV, 2016 WL 3662202, at *4 (Tenn. Ct. App. June 30, 2016) (same).

B.

Having concluded that the court applied the correct standard by determining whether relocation was in the best interest of the minor child, we consider Father's remaining issues, all of which relate to the best-interest finding. The determination of whether relocation is in a child's best interest is a question of fact. *See Franklin v. Franklin*, No. W2020-00285-COA-R3-CV, 2021 WL 5500722, at *2 (Tenn. Ct. App. Nov. 24, 2021). A trial court's specific factual findings are reviewed de novo with a presumption of correctness unless the evidence preponderates otherwise. TENN. R. APP. P. 13(d).

Father argues that the evidence preponderates against two of the juvenile court's factual findings in applying the best-interest factors of the child custody statute. The court found "that both parents have a strong disposition to provide the child with food, clothing, medical care, education, and other necessary care." *See* Tenn. Code Ann. § 36-6-106(a)(4). Father characterizes the proof as showing that Mother was in denial that the child had an eating disorder. And that Mother "rejected speech therapy" and permitted the child's health insurance to lapse. He also faults Mother for her position on the child's vaccinations. Father describes Mother as "at best inattentive" when it comes to providing the child with food, education, and medical care.

Father also argues that the evidence preponderates against the court's finding on "one of the most critical factors in play for [his] child." Specifically, it found the emotional needs and developmental level of the child "weigh[ed] slightly more in favor of the Father." *See id.* § 36-6-106(a)(7). Father submits that the proof showed that "Mother failed and/or refused to recognize the minor child's special needs and developmental delays." And he suggests that Mother was indifferent to the problems that the child was experiencing.

Based upon our review, the evidence does not preponderate against the juvenile court's factual findings. Mother's testimony showed that she had an equal disposition to provide for her child's food, education, and medical care. She was not indifferent to the child's problems; she just had a different approach to them. At most, the proof showed that the parties made different assessments of the nature and severity of the problems confronting the child.

Father complains that the juvenile court also misapplied one of the best-interest factors of the child custody statute. The factor in question considers "[t]he importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment." *Id.* § 36-6-106(a)(10). The court made no finding regarding this factor, but it observed that there was "simply not a way to provide continuity for the Child as he has been accustomed to." Father notes that, the "child had lived in Tennessee

5

since birth," and Father had kept the same business and home for many years. He contrasts that with the evidence that Mother had several jobs and had lived in Florida, Tennessee, and North Carolina. She now lived in Alabama with her fiancé, Clayton C.

But Father's argument misconstrues the continuity factor. The factor examines the child's need for continuity and whether the child's living environment has been stable and satisfactory. The evidence did not show that the child had been adversely impacted by Mother's moves.

For his final issue, Father claims a close examination of some of the best-interest factors found in the parental relocation statute would have resulted in the denial of Mother's request to move with the child. Specifically, he claims that factors (B), (C), (F), and (G) in the parental relocation statute are determinative and were not addressed by the juvenile court.

Factor (B) considers "[t]he age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child." *Id.* § 36-6-108(c)(2)(B). Father argues that the court failed to consider the child's need for assistance with eating, speech, and behavioral issues in its best interests analysis. But the court did address the child's need for special care. It found that the balancing test weighed in favor of Father "for recognizing the problems the Child was having and dealing with them." Yet it was "not pleased" with the manner in which Father chose to deal with those needs. It found that Father "stepped over the line by having the Child in an excessive amount of counseling for six months prior to the Mother becoming aware of it and in not making Mother aware of it." So, even though it found the child was "receiving the therapy he needs," it found that the balancing test weighed in favor of Mother regarding care for the child. And the court specifically ordered that the child be immediately evaluated by an independent expert and that both parties follow all recommendations.

Factor (C) analyzes the "feasibility of preserving the relationship between the nonrelocating parent and the child . . . ." *Id.* § 36-6-108(c)(2)(C). The juvenile court found that both parents were likely to follow the orders of the court. And it adopted a parenting schedule designed to maximize Father's parenting time, giving Father the child's entire summer break, every spring break, and every fall break, in addition to several long weekends and splits of winter break and Easter weekend. The parents had already been sharing residential time on an alternating basis for years. And the court found that each parent was willing to facilitate a close and continuous relationship between the child and the other parent.

Factors (F) and (G) explore the "reasons of each parent for seeking or opposing the relocation" and whether "the relocation of the child will enhance the general quality of life for both the relocating parent and the child." *Id.* § 36-6-108(c)(2)(F)-(G). On appeal,

6

Father concedes that Mother's desire to move with her fiancé was a reasonable purpose that will enhance her quality of life. *See Hall v. Hall*, M2021-00757-COA-R3-CV, 2022 WL 1642700, at *6 (Tenn. Ct. App. May 24, 2022). Father describes his relationship with his child as having "shallow roots," and he fears that the child's move will adversely impact that relationship. Father also expresses concern that a future move by Mother might increase the distance from his child.

Although Father's fears and concerns surrounding the move of his child are legitimate, we do not see them as sufficient to overcome the presumption of correctness we must give the court's factual findings. *See* TENN. R. APP. P. 13(d). So the factors cited by Father do not support reversal of the court's decision.

## III.

Although it only specifically referenced the best-interest factors of the child custody statute, the juvenile court fulfilled the essential requirement of the parental relocation statute by focusing on the child's best interest. And the evidence does not preponderate against the finding that Mother's relocation with the child was in the child's best interest. So we affirm.

_s/ W. Neal McBrayer_
W. NEAL McBRAYER, JUDGE

7