# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 6, 2000 Session

## CHRISTINA MAE STROUD (READ) v. JIMMY RAY STROUD

**Appeal from the Circuit Court for Davidson County**
**No. 90D-2910      Muriel Robinson, Judge**

---

**No. M1999-02239-COA-R3-CV - Filed July 26, 2001**

---

In this post-divorce case, the mother appeals the trial court's refusal to overturn a 1995 order awarding the father a judgment against her and sentencing her to ten days in jail for contempt of court. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM C. KOCH, JR., J., joined.

Connie Reguli, Nashville, Tennessee, for the appellant, Christina Mae Stroud (Read).

Cathy Carpenter Speers, W. Gary Blackburn, Malcolm L. McCune, Nashville, Tennessee, for the appellee, Jimmy Ray Stroud.

## OPINION

This continuing conflict between the parties is complicated and bitter, now involving three states and at least four trial courts. Christina Mae Stroud Read ("Mother") and Jimmy Ray Stroud ("Father") were divorced by the Probate Court of Davidson County in 1991. They had one child, a daughter, born in 1989. Pursuant to the Marital Dissolution Agreement ("MDA"), the parties had joint custody of the child; Mother was the primary custodian and Father was to enjoy reasonable visitation and to pay $200 per month in child support.

Mother moved with the child to South Carolina in 1993. In February 1995, Father filed a petition for contempt in the probate court. The petition recounted a history of the parties' conflicts, including investigations in Tennessee and South Carolina following Mother's allegations that Father

sexually abused the child. The allegations in both states ultimately proved to be unfounded.[1] Father's petition alleged that Mother had interfered with his visitation with his daughter, and requested that Mother be held in contempt of court. Father also requested costs and attorney fees, as well as an injunction prohibiting Mother from interfering with his relationship with his daughter. A "Circuit Court Summons" was issued and returned, marked that it was served March 27, 1995 "by personally serving her at DHS office in Beaufort, S.C." The summons stated:

> You are summoned to appear and defend a civil action (Complaint of Divorce) filed against you in Circuit Court, Davidson County, Tennessee, and your defense must be made within thirty (30) days from the date this summons is served upon you. . .

The summons notified Mother of the date and time of the hearing, notified her that she should appear and "show cause why the relief sought should not be granted. In case of your failure to defend . . . [judgment] by default will be rendered against you for the relief demanded in the complaint." The petition requested "A citation issue together with a copy of this complaint and be served upon [Mother], notifying [her] to appear at the time set out . . . and show cause, if any, why [Mother] should not be judged in contempt of the Court's order and be punished as provided by law, including, but not limited to, confinement in jail." The reference to incarceration was on page five of the petition.

Mother did not appear for the contempt hearing. The probate court issued an order on May 10, 1995, noting her absence, and finding that Mother had done "willful and malicious injury to the father-child relationship." The court found Mother to be in contempt of court and ordered her confined to the Davidson County jail for ten days. The court also awarded Father a judgment of $10,274.85 for attorney fees and expenses required to pursue the matter. The order stated, "[T]hat judgment in the total amount of $10,274.85 is awarded in the nature of child support, the Court finding that the Father had to incur these amounts of attorneys fees and expenses in the best interest of and for the wellbeing and benefit of the minor child . . ."

More than four years later, on October 18, 1999, Mother filed a motion in the Fourth Circuit Court of Davidson County to set aside the sentence and to enter an order that the judgment had been satisfied because Father's child support arrearage exceeded the judgment. The matter was heard on October 29, 1999. Upon learning that no party remained in Tennessee,[2] the trial judge transferred jurisdiction for future proceedings to South Carolina, where the child lived and ordered that "the entire record shall be forwarded to the Family Court for the Fourteenth Judicial Circuit for the State

---

[1]Mother's testimony at the hearing in this matter indicated that Father filed lawsuits in Tennessee and in South Carolina for malicious prosecution after her charges were determined to be unfounded.

[2]Father's counsel informed the court that Father moved to Mississippi in 1996, several months after the conclusion of the proceedings in the probate court.

of South Carolina so the Court is made fully aware of the entire history of this case."[3] The court then refused to set aside the contempt order and the judgment of the probate court. The court also declined to hear any proof regarding Father's payment of child support, or lack thereof, leaving that for the South Carolina and Mississippi courts. This appeal ensued.

## I. Standard of Review

We review this case *de novo* upon the record of the trial court with no presumption of correctness for the trial court's conclusions of law. *Lavin v. Jordan*, 16 S.W.3d 362, 364 (Tenn. 2000).

## II. Criminal Contempt

The trial court determined that the contempt order was proper, should not be set aside, and that the relief Mother requested was barred by Tenn. Code Ann. § 40-30-202, which requires a petition for post-conviction relief within one year after the judgment became final.

"An act of contempt is a wilful or intentional act that offends the court and its administration of justice. Traditionally, contempt has been classified as civil or criminal depending upon the action taken by the court to address the contempt." *Ahern v. Ahern*, 15 S.W.3d 73, 78 (Tenn. 2000) (citations omitted).

Mother was found to be in willful contempt of court and ordered to be "confined to the Davidson County Jail . . . for a period of ten (10) days." Such a sentence, for a finite period without the possibility of release upon compliance with an order, indicates that she was found in criminal contempt. *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996) ("sanctions for criminal contempt are generally both punitive and unconditional in nature"). Mother argues that the sentence for criminal contempt is void for two reasons: 1) the summons to appear did not notify her that she faced criminal charges, and 2) the hearing was held in her absence.

### A. Challenges to Validity

When a party is to be tried for criminal contempt, that person is entitled to all the constitutional protections of any criminal defendant, including the presumption of innocence, the "beyond a reasonable doubt" standard of proof, the protection against self-incrimination, and notice. *Storey v. Storey*, 835 S.W.2d 593, 599 (Tenn. Ct. App. 1992). This court has previously addressed the notice required for criminal contempt as follows:

---

[3]Mother had requested transfer of jurisdiction.

With regard to notice, the United States Supreme Court stated in *Gompers*[4] that

> manifestly every citizen, however unlearned in the law, by mere inspection of the papers in contempt proceedings ought to be able to see whether it was instituted for private litigation or for public prosecution, whether it sought to benefit the complainant or vindicate the court's authority. He should not be left in doubt as to whether relief or punishment was the object in view. He is not only entitled to be informed of the nature of the charge against him, but to know that it is a charge and not a suit.

> *Id*. at 446, 31 S.Ct. at 500, 55 L.Ed. at 807-08.

> In addition, Rule 42(b) of the Tennessee Rules of Criminal Procedure requires that a criminal contempt be prosecuted on notice, which "shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and *describe it as such*." Tenn. R. Crim. Proc. 42(b) (emphasis added).

*Storey*, 835 S.W.2d at 599-600.

Mother contends that the notice was inadequate to inform her that the charges were criminal in nature, and did not notify her that she faced the possibility of incarceration. Criminal contempt convictions are subject to reversal for lack of notice when relief is timely sought. *Storey*, 835 S.W.2d at 600; *Pfister v. Searle*, No. M2000-01921-COA-R3-JV, 2001 WL 329535 at *3 (Tenn. Ct. App. March 28, 2001) (no Tenn. R. App. 11 application filed).

Mother also argues that Tenn. R. Crim. P. 43 requires the defendant's presence for the proceedings. The Tennessee Supreme Court addressed the absent defendant in *State ex rel. Underwood v. Brown*, 244 S.W.2d 168 (Tenn. 1951), a petition for *habeas* review and stated, "There can be no question but that the judgment . . . was absolutely void because the relator was tried, convicted and sentenced in his absence. This being true, the judgment . . . was no judgment and was of no effect or consequence." *Id*. at 170 (citations omitted).

The Court of Criminal Appeals, however, in dealing with a prison escapee held that Tenn. R. Crim. P. 43 "does not bar a trial when a defendant fails to appear on his trial date. An accused who has notice of the time and place of the trial and of his right to attend, and who nonetheless voluntarily absents himself, will be deemed to have waived his right to be present." *State v. Kirk*, 699 S.W.2d 814, 819 (Tenn. Crim. App. 1985). Although a defendant may waive the right to be present, the waiver requires more than the defendant's absence at one hearing. *Id*.

---

[4] *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed 797 (1911).

Although the Court of Criminal Appeals upheld the conviction, it held that a trial court should "indulge every reasonable presumption against a waiver" of the defendant's right to be present at trial. *Id.* The appellate court demanded a high standard of proof that the defendant knew of his trial date and that the absence was voluntary. "Mere absence at the time the case is called for trial is insufficient to show a waiver of the right to be present." *Id.* The court stated:

> There is, of course, a public interest in the appearance of fairness in judicial proceedings, which is best served by the presence of an accused at trial. We do not condone routine trials outside of the presence of an accused. For this reason, when a defendant fails to appear on his trial date we would require that there be some countervailing interest that requires that trial proceed.

*Id.* at 820.

Mother argues that there were no countervailing interests that required the trial to proceed in her absence, and that the trial court "in its haste, did not consider less draconian measures available to it to bring the Mother to the Court to face the allegations being brought against her."[5]

Mother has raised challenges to the validity of her contempt conviction which, if timely made, would require further analysis of the contempt finding. However, we must first determine if the trial court was correct in determining that Mother's challenges are time-barred.

### B. Time for Seeking Post-Conviction Relief

Relief is available for defendants whose convictions are void. The relevant statute provides:

> Relief under this part shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States.

Tenn. Code Ann. § 40-30-203.

Thus, relief from the judgment was available to Mother if she could demonstrate an abridgement of rights as she now claims. However, the statutes also create a limitations period for persons seeking relief:

> (a) Except as provided in subsections (b) and (c),[6] a person in custody under a sentence of a court of this state must petition for post-conviction relief under this part

---

[5]The trial court herein found that the 1995 order on its face showed that Mother was duly notified of the hearing, and did not further inquire into the circumstances behind the four-year-old order.

[6]The subsections are not relevant to this appeal.

within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of such petition shall be barred. The statute of limitations shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or equity. Time is of the essence of the right to file a petition for post-conviction relief or motion to reopen established by this chapter, and the one-year limitations period is an element of the right to file such an action and is a condition upon its exercise. Except as specifically provided in subsections (b) and (c), the right to file a petition for post-conviction relief or a motion to reopen under this chapter shall be extinguished upon the expiration of the limitations period.

Tenn. Code Ann. § 40-30-202.[7]

Neither party has addressed the meaning of "in custody" in the statute. Mother is not, and has never been, incarcerated on her contempt conviction. However, the phrase, "in custody," has been interpreted very broadly by our Supreme Court when discussing post-conviction relief. *See Albert v. State*, 813 S.W.2d 426, 427 (Tenn. 1991); *State v. McCraw*, 551 S.W.2d 692, 694 (Tenn. 1977).

In *State v. McCraw*, the Court held "the Court of Criminal Appeals was correct in construing the term 'in custody' to mean any possibility of restraint on liberty." *McCraw*, 551 S.W.2d at 694. In so holding, the Court allowed a man who had served his sentence to pursue his petition for post-conviction relief. The petitioner, although he was no longer in prison, was "restrained" because he was not allowed to vote after moving to another state. In *Albert v. State*, the Court "declined the [State's] invitation to reverse *McCraw*," again holding that "in custody" means "any possibility of restraint on liberty." *Albert*, 813 S.W.2d at 427. Although the post-conviction relief statute has been amended since the *Albert* decision in 1991, the legislature did not define, or otherwise change the meaning of, "in custody."

Mother was sentenced for contempt of court and the sentence remains in effect. At the conclusion of the proceedings involved in this appeal, the trial court ordered Mother taken into custody to begin serving her 10-day sentence. She posted a bond to avoid incarceration during this appeal. An unserved sentence clearly constitutes a "possibility of restraint on liberty." Thus, Tenn. Code Ann. § 40-30-202(a) applies to Mother's sentence and would, on its face, prohibit her attempt to set aside the conviction more than four years after its entry.

However, on occasion "due process considerations" occurring *after* the sentence was imposed have served to toll the statute of limitations. Our Supreme Court recently addressed Tenn. Code Ann. § 40-30-202(a) in *Williams v. State*, 44 S.W.3d 464 (Tenn. 2001). In that case, the Court held:

---

[7]This statute became effective on May 10, 1995, the very day the judgment herein was entered. Even if Mother's conviction predated the statute however, she would have had only one year from the effective date of the act to petition for post-conviction relief. 1995 Tenn. Pub. Acts, ch. 207, § 3.

[T]he 1995 Post-Conviction Procedure Act clearly requires that post-conviction claims be filed in a timely manner. Although we agree that Williams filed his petition beyond the statutory deadline, due process considerations may have tolled the limitations period. Hence, the statute cannot be strictly applied, without further inquiry, to deny him the reasonable opportunity to seek post-conviction relief. Consequently, we affirm the Court of Criminal Appeals's decision to remand the case to the trial court for an evidentiary hearing to determine the circumstances precluding the appellee from filing a timely application.

*Williams*, 44 S.W.3d at 471.

In *Williams*, the defendant was convicted and sentenced, and the Court of Criminal Appeals affirmed his conviction. His court appointed attorney did not file a timely application for permission to appeal to the Supreme Court, erroneously believing that he no longer represented the defendant. A dispute existed between the defendant and his former counsel as to whether former counsel informed the defendant that he was not going to file the application for permission to appeal. More than twenty-one months after his conviction, the defendant filed a *pro se* petition for post-conviction relief, alleging, *inter alia*, that he had been "denied due process and effective assistance of counsel during the appellate process." *Id*. at 466. The Supreme Court noted that the defendant had "failed to seek timely post-conviction relief under a strict application of the statute," *Id*. at 468, but stated:

[W]e are not prepared to summarily dismiss this petition as "indisputably time-barred." This Court has previously held that strict application of the statute of limitations may not deny a petitioner "a reasonable opportunity to assert a claim in a meaningful time and manner," *Seals v. State*, 23 S.W.3d 272, 279 (Tenn. 2000), and we are concerned that a strict application of the statute in this case could have this effect on the appellee. Specifically, the record indicates that the appellee might have been denied the opportunity to challenge his conviction in a timely manner through no fault of his own but because of the possible misrepresentation of counsel.

*Id.*

The Court referred to *Seals v. State*, in which it held that "due process requires tolling of the statute of limitations where a petitioner is denied the reasonable opportunity to assert a claim in a meaningful time and manner due to mental incompetence." *Id*. at 469 (quoting *Seals*, 23 S.W.3d at 279). The Court was persuaded in *Williams* and in *Seals* that the statute of limitations might be suspended if "circumstances beyond [the petitioner's] control, *i.e.*, mental illness . . . [or] an attorney's misrepresentation, either attributable to deception or other misconduct" prevented the petitioner from filing a timely post-conviction claim. *Id.*

Mother offers no explanation for her more than four year delay in filing her motion. She does not assert that some circumstance beyond her control prevented her from seeking post-conviction relief within the one-year limitation. Therefore, we find no "due process considerations" which

would warrant tolling the statute of limitations. We affirm the trial court's denial of the motion to set aside Mother's contempt conviction as time-barred.

## III. Monetary Judgment

The probate court, in 1995, awarded Father $10,274.85 for "fees and expenses incurred by [Father] in the enforcement of this Court's Orders, which included defending himself against the latest unsubstantiated charges . . . in South Carolina . . . related to and made necessary by the willful contempt of [Mother] and her willful and malicious injury to the father-child relationship. . ." The court found the fees to be reasonable and necessary. The judgment was awarded "in the nature of child support, the Court finding that the Father had to incur these amounts . . . in the best interest of and for the wellbeing and benefit of the minor child in order for her to re-establish and maintain a meaningful relationship with her father. . ."

Upon review of the order, we conclude it granted Father a judgment for attorney fees and expenses he incurred in enforcing and defending his visitation rights. The trial court's use of the phrase "in the nature of child support" may have triggered legal consequences regarding enforcement of the judgment. It did not, however, relieve Father of his obligation to support his child.

It appears to us that the parties may have interpreted the order's "in the nature of child support" language as relieving Father of his support obligation.[8] We do not so interpret it. A modification of a child support award is available only when "there is found to be a significant variance . . . between the [child support] guidelines and the amount of support currently ordered." Tenn Code Ann. § 36-5-101(a)(1). There is no indication in the 1995 order or the record before us that a modification was requested, that proof was taken on the relevant issues, or that the trial court ordered any modification of Father's support obligation.

Mother's petition seeking relief from the 1995 order did not ask to have the order voided or set aside.[9] Instead, the motion asked the court to find that the judgment was satisfied, stating, "[T]he judgment has been satisfied as [Father] has not paid child support in an amount that exceeds the amount of the judgment." At the hearing, Mother's counsel again asked the court to enter a satisfaction of judgment and offered to present proof regarding Father's child support payment history. The trial court declined to hear proof on the matter, stating, "The judgment stands. What

---

[8]On appeal, Mother contends that "the Trial Court should have entered an order satisfying the judgment so that she could receive the support due from the Father for the minor child." Father, in his brief, contends that he was "not forever relieved of his obligation to support his minor child. Instead, he was awarded a judgment for a certain portion of his child support obligation . . ." To the extent that either of these parties may have interpreted the order as suspending Father's child support obligation, we cannot agree. The order awarding the judgment did not state the reason for making it "in the nature of child support." However, we note Father has an ongoing responsibility to support his child, and Mother has an obligation to pay $10,274.85 to Father. Neither obligation voids the other.

[9]On appeal, Mother asks this court to set aside the judgment as void because it violates public policy. This argument is based on an interpretation of the judgment as relieving Father of his child support obligation. Again, we do not interpret the judgment to do that, or even to attempt to do that.

you do about his nonpayment of child support, obviously, is going to be in a different court. It will either be in Mississippi or South Carolina.[10] If they want to give credit for that, then that's between the judges of the other two jurisdictions."

We agree. Mother has a child support award which she can seek to enforce through available procedures. Father has a judgment, which is also characterized as a child support award, which he can also seek to enforce. The trial court properly determined that issues of enforcement or modification of support must be resolved in other jurisdictions. Relevant Tennessee statutes provide:

> A tribunal of this state issuing a support order consistent with the law of this state has continuing, exclusive jurisdiction over a child-support order:
> (1) As long as this state remains the residence of the obligor, the individual obligee, or the child for whose benefit the support order is issued; or
> (2) Until all of the parties who are individuals have filed written consents with the tribunal of this state for a tribunal of another state to modify the order and assume continuing, exclusive jurisdiction.

Tenn. Code Ann. § 36-5-2205(a).

Continuing jurisdiction to modify a child support order does not exist in this state because no party concerned with this matter remains in Tennessee. The above statute is part of the Uniform Interstate Family Support Act, which was adopted by Tennessee, 1997 Tenn. Pub. Acts, ch. 551 § 2, along with the "Comments to Official Text."[11] 2000 Tenn. Pub. Acts, ch. 922 § 28 (directing the Tennessee Code Commission to add the Official Comments of the Commissioners of Uniform State Laws to the relevant sections of the Act). The comment to the above provision states, in pertinent part:

> Drawing on the precedent of the federal Parental Kidnapping Prevention Act, 28 U.S.C. § 1738A, the issuing tribunal retains continuing, exclusive jurisdiction over a child support order, except in very narrowly defined circumstances. As long as one of the individual parties or the child continues to reside in the issuing state, and as long as the parties do not agree to the contrary, the issuing tribunal has continuing, exclusive jurisdiction over its order--which in practical terms means that it may modify its order. The statute attempts to be even-handed--the identity of the remaining party--obligor or obligee--does not matter. If the individual parties have left the issuing state but the child remains behind, continuing, exclusive jurisdiction remains with the issuing state.

---

[10]Mother informed the court she had begun proceedings to modify custody in South Carolina.

[11]Regarding the comments to this statute, our Supreme Court has stated, "We give substantial deference to the 'Comments to Official Text' contained throughout UIFSA. 'The official comments, while not binding, are very persuasive in interpreting the statute to which they apply.'" *Letellier v. Letellier*, 40 S.W.3d 490, 493 n.2 (Tenn. 2001) (quoting *Smith v. First Union Nat'l Bank*, 958 S.W.2d 113, 116 (Tenn. Ct. App. 1997)).

The other side of the coin follows logically. Just as Subsection (a)(1) defines the retention of continuing, exclusive jurisdiction, by clear implication the subsection also defines how jurisdiction to modify may be lost. That is, if all the relevant persons--the obligor, the individual obligee, and the child--have permanently left the issuing state, the issuing state no longer has an appropriate nexus with the parties or child to justify exercise of jurisdiction to modify. Further, the issuing tribunal has no current information about the factual circumstances of anyone involved, and the taxpayers of that state have no reason to expend public funds on the process.

Tenn. Code Ann. § 36-5-2205 cmt.

We find that the trial court properly declined to hear proof regarding Father's payment history or to find the judgment satisfied. Tennessee no longer has an "appropriate nexus with the parties or the child to justify exercise of jurisdiction to modify." *Id.*, *see also Letellier v. Letellier*, 40 S.W.3d 490, 493 (Tenn. 2001) (District of Columbia lost jurisdiction over child support when both parents and the child "were no longer residents").

IV. Conclusion

In conclusion, we affirm the trial court's refusal to set aside the judgment for criminal contempt because the petition was time-barred, and we affirm the trial court's refusal to modify the judgment, because the trial court was without jurisdiction to do so. This cause is remanded to the trial court for such further proceedings as may be necessary. Costs are taxed to the appellant, Christina Mae Stroud Read, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE

-10-